UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT MILLER, an individual, MICHAEL SPAULDING, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>KSHAMA SAWANT, an individual. CITY OF SEATTLE, a municipal corporation,<br><br>Defendant. | NO.<br><br>COMPLAINT AND JURY DEMAND |

## INTRODUCTION

1. This was never intended to be a complaint against the City of Seattle or its City Council. The officers never wanted public money. This was intended to be a Complaint against one individual who, acting in her own capacity and only on her own behalf they believed, defamed two good men. Police officers, Scott Miller and Michael Spaulding, had their reputations ruined by an ambitious politician, doing so for personal gain. However, the City defendant has now stepped forward claiming that individual was acting within her scope and duty as a city official.

2. In February 2016, Officer Spaulding and Detective Miller were apprehending Che Taylor—a violent felon and rapist—when he began pulling a gun on them. The officers were forced to fire, defending their lives and ending his life. In less than a week, having never

COMPLAINT AND JURY DEMAND - 1

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6407264.2

spoken to the officers, their attorney, the department, and with the investigation still incomplete, Kshama Sawant was publicly pronouncing these officers as "murderers" and claiming them to be racists by referring to the shooting as a product of "racial profiling." Sawant continued defaming the officers, with particular emphasis immediately before their inquest hearing, and does so even to this day—despite the officers having been cleared by an impartial jury.

3. Instead of permitting the officers to have their day in court with Sawant, the City of Seattle took sides—and, sadly, mobilized against the officers in retaliation for their decision to exercise their right to petition the courts. The City doubled-down on Sawant's defamatory statements, insisting that she was acting on the City's behalf and simply engaging in "advocacy."

4. But perhaps most strikingly, the City re-opened the investigation into the Che Taylor shooting weeks after the officers indicated that they might be forced to involve the City in litigation. In the newly-opened investigation, long after-the-fact, the City refused to appoint the officers counsel or let them review relevant documents. Predictably, this galvanized Che Taylor's family to bring their own suit against the officers.

5. Through this lawsuit, the officers intend to not only get their good names back, but also vindicate their First Amendment right against governmental retaliation.

### THE PARTIES

6. Plaintiff, Scott Miller, is an individual residing in Snohomish County.

7. Plaintiff, Michael Spaulding, is an individual residing in King County.

8. Defendant, Kshama Sawant, is an individual residing in King County.

9. Defendant, the City of Seattle, is a municipal corporation in King County.

COMPLAINT AND JURY DEMAND - 2

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6407264.2

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over claims brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over state law claims arising out of the same nucleus of operative facts under 28 U.S.C. § 1367.

11. Venue is properly located in the Western District of Washington under 28 U.S.C. § 1391(b), as the incidents complained of in this Complaint occurred in King County, Washington, and all of the defendants are residents of King County, Washington.

## FACTUAL BACKGROUND

### The Defendants

12. Defendant, Kshama Sawant, is a well-known local figure, with national ambitions. She has been criticized for using City of Seattle resources to play to her base and inject herself into national politics. She made headlines, for example, when she used her platform to advocate "shutting down" the presidential inauguration.

13. Sawant brands herself as counter-cultural and denies being part of "the system." According to her various public statements and website, she is a "voice for working people." Sawant, therefore, holds significant credibility with the public, particularly in the Seattle metropolitan area. People assume that when she speaks, even when expressing opinion, it is based upon facts made available to her by virtue of her leadership position, role in Seattle, and socialist folk-hero status.

14. As discussed below, one of Sawant's most effective political tools has historically been opposition to law enforcement. Sawant has, herself, been arrested several times when interfering with law enforcement and engaging in disorderly conduct, all to the approval of her political base.

15. In Sawant's own words, "the buck stops with her" in the City of Seattle. To the extent the City must decide between line-level employees and a councilmember, it is no

COMPLAINT AND JURY DEMAND - 3

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6407264.2

contest. Contrary to Sawant's articulated politics, the City's working class have no real voice in opposition to the City's leadership.

### The Che Taylor Shooting

16. Officer Spaulding and Detective Miller are police officers in the Seattle Police Department.

17. In February 2016, Officer Spaulding and Detective Miller were called upon to serve a high-risk warrant in the Wedgewood/Lake City area.

18. The context was dangerous to begin with. However, it became even more dangerous when Che Taylor arrived in a Black Dodge. The officers immediately recognized him as a known drug dealer, pimp and felon—recently released from prison following a 23-year sentence for break-in and forcible rape. Taylor was also a suspect in a Kirkland-based murder investigation, in which the victim was beaten to death with a hammer.

19. At the time, Taylor had two "strikes" and a visible gun in a holster on his right hip (which was, itself, a felony triggering an ATF hit). The officers knew that an arrest would likely lead to a violent confrontation, as Taylor, if convicted, would be going back to prison for the rest of his life.

20. While the officers waited for backup in order to arrest Taylor for unlawful possession of a firearm, he went down to the nearby trailer park—a location known to be rife with narcotics—and attempted to pimp out the female who accompanied him.

21. When Taylor returned to the scene, still armed, the arrest team was arriving. As they approached, it drew Taylor's attention and the officers moved to the backside of the vehicle—and began shouting commands for him to show his hands.

22. Taylor did not comply. Instead, he ducked down and began reaching for the gun in his holster. The police car's vehicle camera picked up the officers' final shouts, "hey no

COMPLAINT AND JURY DEMAND - 4

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6407264.2

hey no hey no" before both were forced to open fire. When Taylor fell, the gun—which was out of the holster and in his hand at that point—fell into his vehicle.

23. Che Taylor passed away and the officers were put on administrative leave per standard operating procedure. Consistent with state law, the King County prosecutor began convening an inquest to determine whether charges should be brought.

### False Statements

24. Approximately five days after the shooting, Sawant appeared before a crowd and media in front of the police department. This was not official city council business, and certainly not a "legislative function." Sawant, however, implied awareness of inside factual information, and appeared to be making a statement against interest. With gravitas established, she went on to pronounce Che Taylor's death a "brutal murder" and product of "racial profiling."

25. The crowd can be heard acknowledging and accepting the statements.

26. In making these public statements about two private citizens, who did everything right:

    a. Sawant never attempted to speak to the officers about the event;

    b. Sawant never attempted to speak to the officers' counsel about the event;

    c. Sawant never attempted to speak to any of the eyewitnesses about the event;

    d. Sawant has no formal police training or expertise;

    e. Sawant has no background in law enforcement;

    f. Sawant did not wait for an internal investigation to be completed; and

    g. Sawant did not wait for a neutral and contested inquest to occur.

27. What is more, at the time, it was known that Che Taylor had a violent criminal history, was armed, was reaching for his gun, and a video of the encounter had been released to the public. This was ignored or disregarded by Sawant.

COMPLAINT AND JURY DEMAND - 5

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6407264.2

28. The statements were not in any way qualified or couched as opinion. Sawant did not acknowledge that the investigation was ongoing. She, instead, tried and convicted the officers herself in the court of public opinion.

29. Sawant reiterated the above-statements publicly throughout the year and, with particular emphasis, immediately before the officers' inquest.

30. The inquest took place approximately a year after the shooting. It was convened by the King County prosecutor, overseen by a respected judge, and contested by Che Taylor's family lawyer. An impartial jury cleared the officers of wrongdoing.

31. In addition, the City's Force Investigation Team (FIT) performed an investigation, in which the Office of Professional Accountability (OPA), participated and were present throughout. Findings were issued clearing the officers.

32. FIT's findings were then reviewed by City's Firearms Review Board (FRB). OPA, as a standing part of the FRB, participated. The officers were cleared again.

33. The SPD also confirmed that the officers' conduct was within policy.

34. Sawant, however, continues to refer to the shooting as a "murder" and publicly asserts that the officers avoided "accountability" (touting the implicit—if not explicit—factual premise that this was a race-based murder).

### Request for Retraction

35. The officers requested that Sawant retract her statements.

36. Sawant did not even bother to respond to or acknowledge their request.

### Impact On the Officers

37. With the political firestorm created when Sawant—purportedly speaking with factual authority—publicly called the officers racist murderers, the officers' lives were turned upside down.

38. The fairness of the inquest hearing was implicated by the defamation.

COMPLAINT AND JURY DEMAND - 6

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6407264.2

39. Being called a racist and murderer directly impacted their careers, which were stymied.

40. The officers were publicly berated and chastised.

41. The officers watched their families suffer. Detective Miller, whose children attended the Seattle School District, had to move.

42. To this day, a Google search of the officers bespeaks the impact on their reputation and good names.

43. The damage has been far-reaching, extending throughout King County and well-beyond.

## Retaliation

44. The officers brought suit against Sawant in Superior Court, making clear that this was a private action against only Sawant individually—not in her capacity as a councilmember.

45. The City, however, resolutely backed Sawant. It attributed her defamatory comments to "advocacy" and confirmed emphatically that she was acting within the scope of her official governmental duties.

46. Public funds were expended to retain expensive legal counsel for Sawant, who attacked and threatened the officers.

47. When the officers pointed out that, by virtue of the City's surprising position backing Sawant, they may be forced to join it in litigation, they were promptly retaliated against. The OPA—which had, to date, concurred to the officers' use of force repeatedly—re-opened an investigation into their conduct vis-à-vis the Che Taylor shooting. The officers were forced to testify under pain of termination and re-live the events, all while the City refused to provide them relevant documentation for review. Nor would anybody explain why this was occurring, or on whose orders.

COMPLAINT AND JURY DEMAND - 7

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6407264.2

48. As a consequence, the officers were personally sued by the family of Che Taylor.

## JURY DEMAND

The officers demand a jury on all issues so triable.

## CAUSES OF ACTION

### Defamation and Defamation Per Se

49. Plaintiffs incorporate all of the above-allegations as if stated herein in full.

50. Defendant Sawant defamed Plaintiffs by stating and publishing harmful and damaging statements.

51. Defendant Sawant was acting in her capacity as an employee of the City of Seattle.

52. The statements are false and unprivileged.

53. Because the statements assert criminal conduct and embrace plaintiffs' job and business, this constitutes defamation per se.

54. The statements have not been retracted.

55. The conduct proximately caused harm.

56. Plaintiffs suffered damage in an amount to be proven at trial.

### Federal Defamation

57. Plaintiffs incorporate all of the above-allegations as if stated herein in full.

58. Defendant Sawant defamed Plaintiffs by stating and publishing harmful and damaging statements.

59. The statements are false and unprivileged.

60. Because the statements assert criminal conduct and embrace plaintiffs' job and business, this constitutes defamation per se.

61. The statements have not been retracted.

COMPLAINT AND JURY DEMAND - 8

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6407264.2

62. The defamation proximately caused harm which implicated federal rights; including without limit, the officers' right to an impartial jury at their inquest and public employment.

63. Plaintiffs suffered damage in an amount to be proven at trial.

64. The conduct was both the product of City policy, and subsequently ratified by the City.

### Retaliation

65. The officers have a right to petition the courts under the First Amendment to the United States Constitution.

66. They exercised that right when they brought suit against Sawant in King County Superior Court, and indicated that they may be forced to file suit against the City of Seattle.

67. In retaliation for that free speech, the City—through OPA, which reports to the City Council and Sawant—re-opened a closed investigation into the officers.

68. This conduct by the City and Sawant proximately caused harm to the officers in an amount to be proven at trial.

### Outrage

69. By virtue of the facts set forth above, the Defendants are liable for the common law tort of outrage under Washington law.

### RELIEF REQUESTED

Plaintiffs pray the following relief:

A. Damages in an amount to be proven at trial;

B. Punitive damages;

C. Attorneys' fees and costs as permitted by 42 U.S.C. § 1988 and equity;

D. All other relief the Court deems just and proper.

COMPLAINT AND JURY DEMAND - 9

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6407264.2

1  RESPECTFULLY SUBMITTED this 5th day of April, 2018.

s/Daniel A. Brown
Daniel A. Brown, WSBA #22028
Attorneys for Plaintiffs Miller and Spaulding
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
dbrown@williamskastner.com
Telephone: (206) 628-6600
Fax: (206) 628-6611
Email: dbrown@williamskastner.com

COMPLAINT AND JURY DEMAND - 10

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6407264.2