UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT MILLER and MICHAEL SPAULDING,<br><br>Plaintiffs,<br><br>v.<br><br>KSHAMA SAWANT and CITY OF SEATTLE,<br><br>Defendants. | CASE NO. 18-0506MJP<br><br>ORDER GRANTING MOTION TO DISMISS |

THIS MATTER comes before the Court on Defendants' Motion to Dismiss the Second Amended Complaint (Dkt. No. 24) and Plaintiffs' Motion to Strike (Dkt. No. 30). Having reviewed the Motions, the Response (Dkt. No. 26), the Reply (Dkt. No. 28), the Surreply (Dkt. No. 30) and the related record, the Court GRANTS the Motion to Dismiss and the Motion to Strike.

ORDER GRANTING MOTION TO DISMISS - 1

**Background**

In February 2016, Plaintiffs—City of Seattle Police Officers Scott Miller and Michael Spaulding—were serving a warrant when they encountered Che Taylor. (Dkt. No. 23 at ¶¶ 29-31.) Plaintiffs claim they recognized Mr. Taylor, a "known drug dealer, pimp, and felon" with a violent past, and observed that he was visibly armed. (Id. at ¶¶ 32-35.) When Mr. Taylor refused to comply with their commands and instead appeared to reach for his gun, they opened fire, shooting and killing him. (Id. at ¶¶ 37-39.) The incident drew immediate public attention, including that of Defendant City Councilmember Kshama Sawant ("Councilmember Sawant"). (Id. at ¶ 43.)

Plaintiffs filed this federal suit in April 2018, alleging that Councilmember Sawant repeatedly made false and defamatory statements and asserting state and federal causes of action for defamation and defamation per se and outrage against her.[1] (See Dkt. No. 1.) On April 30. 2018, Plaintiffs filed their First Amended Complaint. (Dkt. No. 9) ("FAC"). In relevant part, the FAC alleged:

> Approximately five days after the shooting, Sawant appeared before a crowd and media in front of the police department. This was not official city council business, and certainly not a "legislative function." Sawant, however, implied awareness of inside factual information, and appeared to be making a statement against interest. With gravitas established, she went on to pronounce Che Taylor's death a "brutal murder" and product of "racial profiling."
>
> . . .
>
> On information and belief, Sawant reiterated the above-statements publicly throughout the year and, with particular emphasis, immediately before the officers' inquest. The officers believe that civil discovery—which Sawant frenetically stonewalled and sought secrecy orders in relation to, in Superior Court—will uncover a pattern of culpable conduct and defamatory statements.

---

[1] Though not the subject of this Motion to Dismiss, the Complaint also asserts causes of action for retaliation and outrage against the City of Seattle.

(Id. at ¶¶ 24, 29.)

In September 2018, the Court ordered Plaintiffs to file a more definite statement setting forth "(1) the statements allegedly made by Defendant Sawant claimed to be false/defamatory, (2) when each statement was made, and (3) to whom it was made." (Dkt. No. 22.)

In October 2018, Plaintiffs filed their Second Amended Complaint (Dkt. No. 23) ("SAC"), apparently in an effort to comply with the Court's Order. With few exceptions, the SAC is substantively identical to the FAC. (Compare Dkt. No. 9, Dkt. No. 23.) In relevant part, the SAC alleges:

> Approximately five days after the shooting, Sawant appeared before a crowd and media in front of the police department.
>
> This was not official city council business, and certainly not a "legislative function."
>
> Sawant, however, implied awareness of inside factual information, and appeared to be making a statement against interest.
>
> With gravitas established, she went on to pronounce Che Taylor's death a "brutal murder" and product of "racial profiling."
>
> . . .
>
> On information and belief, Sawant reiterated the above-statements publicly again on June 20, 2017 beginning at around 6:40 p.m. when she stated to a crowd of public gathered on the streets of Seattle claiming there can be no justice for anyone of color as there was no justice for Che Taylor. In fact, at that time, she proclaimed again that Che Taylor "was murdered by the police" after emphasizing that because he was "black" there would be no justice clearly implicated again her prior statements that his death was racially motivated.
>
> The officers believe that through civil discovery—which Sawant frenetically stonewalled and sought secrecy orders in relation to, in Superior Court—will uncover a pattern of culpable conduct and defamatory statements that she made with regards to them and the incident involving Che Taylor's death.

(Dkt. No. 23 at ¶¶ 43-46, 54-55.)

Councilmember Sawant moved to dismiss the SAC. (Dkt. No. 24.) In response, Plaintiffs—for the first time and in a declaration of counsel—offered a complete transcription of Councilmember Sawant's allegedly defamatory statements:

<u>February 2016 Statement</u>:

This is dramatic racial injustice, in this city and everywhere in this nation. The brutal murder of Che Taylor, just a blatant murder at the hands of the police, show how urgently we need to keep building our movement for basic human rights for black people and brown people. I want to let you know that I stand here both as an elected official, as a brown person, as an immigrant woman of color, and as someone who has been in solidarity with the Black Lives Matter movement, and our movement for racial, economic and social justice. . . .

And I am here as an elected official because I am completely committed, unambiguously committed, to holding the Seattle Police Department accountable for their reprehensible actions, individual actions. We need justice on the individual actions and we need to turn the tide on the systematic police brutality and racial profiling.

<u>June 2017 Statement</u>:

I join the NAACP in demanding such a transparent public hearing. When Che Taylor was murdered by the police, the community and I demanded such a hearing from the Mayor and from Council member Gonzalez whose committee oversees the SPD, but neither the Mayor nor Council member Gonzalez responded. In . . . in light of the horrific killing of Charleena now I again urge . . . I publicly urge the City Council to hold such a hearing. I have also earlier today sent a number of important questions to the SPD.

. . . We demand that the City of Seattle appoint an independent committee to review this case . . . with . . . with full public accountability. We cannot rely on the existing process to determine why Charleena was killed because that process has failed Che Taylor . . . that process has failed every person who was killed at the hands of the Police. Sisters and brothers, I will add one more thing for our movement that is standing with Charleena to think about, a deeply unequal society such as ours also implies that the lives of poor and low-income people, black and brown people, homeless people, those who have mental health issues and challenges . . . the system treats our lives as expendable.

(Dkt. No. 27 at ¶¶ 4-5) (emphasis omitted).

1   Additionally, Plaintiffs for the first time alleged that on the "same day" that
Councilmember Sawant made her initial statements, the Seattle Times published an article
identifying them by name. (Dkt. No. 26 at 1.)

**Discussion**

I. **Legal Standard**

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th Cir. 2016). In ruling on a Rule 12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint in the light most favorable to the non-movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (1955)).

Despite this otherwise liberal pleading standard, the Ninth Circuit has held that courts should consider First Amendment concerns even at the pleading stage. "[W]here a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." Flowers v. Carville, 310 F.3d 1118, 1130 (9th Cir. 2002) (quoting Franchise Realty Interstate Corp. v. S.F. Local Joint Exec. Bd. of Culinary Workers, 542 F.2d 1076, 1082-83 (9th Cir. 1976)). "Defamation claims, in particular, must be advanced with sufficient specificity," Harris v. City of Seattle, 315 F.

Supp. 2d 1112, 1123 (W.D. Wash. 2004), including "the precise statements alleged to be false and defamatory, who made them and when." Flowers, 310 F.3d at 1130.

II.     **Motion to Strike**

As an initial matter, Plaintiffs in their Surreply have moved to strike any arguments concerning their failure to plead "actual malice" (Dkt. No. 30), which were raised by Councilmember Sawant for the first time in her Reply. (See Dkt. No. 28 at 11-12.) As there can be no dispute that these arguments are improper, see, e.g., Amazon.com LLC v. Lay, 758 F. Supp. 2d 1154, 1171 (W.D. Wash. 2010); Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007), the Court GRANTS the Motion to Strike and will not consider these arguments in its assessment of the Motion to Dismiss.

The Court notes that "the standard of fault in defamation cases depends on the nature of the plaintiff." LaMon v. Butler, 112 Wn.2d 193, 197 (1989) (en banc). "If the plaintiff is a public figure or public official, he must show actual malice. If, on the other hand, the plaintiff is a private figure, he need show only negligence." Id.; see also New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964) (holding that a public official may not recover damages for a defamatory falsehood "relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."). While in general, "the initial question to be determined in cases of this nature is whether plaintiffs are public officials or public figures," Tilton v. Cowles Pub. Co., 76 Wn.2d 707, 716 (1969), the parties have not briefed the question of whether Officers Miller and Spaulding are public officials for purposes of their defamation claims. Accordingly, the Court does not address whether Plaintiffs' failure to plead "actual malice" provides grounds for dismissal.

1   **III.    Motion to Dismiss**

2         **A.  Defamation**

The elements of a defamation claim are (1) a false statement; (2) lack of privilege; (3) fault; and (4) damages. Herron v. KING Broadcasting Co., 112 Wn.2d 762, 776 (1989). The First Amendment further requires that the challenged statement be made "of and concerning" the plaintiff. See Sullivan, 376 U.S. at 288-92 (1964); Sims v. KIRO, Inc., 20 Wn. App. 229, 233 (1978).

Whether a statement satisfies the "of and concerning" requirement is a question of "constitutional dimension" which "should ordinarily be resolved at the pleading stage." Gilman v. Spitzer, 902 F. Supp. 2d 389, 394 (S.D.N.Y. 2012) (citations omitted). In determining whether the "of and concerning" requirement has been satisfied, "[i]t is not necessary that the plaintiff be mentioned by name in order to recover damages." Camer v. Seattle Post-Intelligencer, 45 Wn. App. 29, 37 (1986). However, "[t]he defamatory character of the language used must be certain and apparent from the words themselves, and so must the identification of the plaintiff as the person defamed." Sims, 20 Wn. App. at 234 (citation omitted). "One cannot by implication identify himself as the target of an alleged libel if the allegedly false statement does not point to him." Id. (citation omitted). Where a defamatory statement concerns a group or class of persons, a member may sustain a claim for defamation "but only if (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or (b) the circumstances of [the statement] reasonably give rise to the conclusion that there is particular reference to the member." Id. at 236 (citing Restatement (Second) of Torts § 564A (1977)); see also Barger v. Playboy Enterprises, Inc., 564 F. Supp. 1151, 1153 (N.D. Cal. 1983) ("If the group is small and its members easily ascertainable, plaintiffs may succeed. But where the group is

large—in general any group numbering over twenty-five members—the courts . . . have consistently held that plaintiffs cannot show that the statements were 'of and concerning them.'") (citations omitted). In other words, whether proceeding under an individual or group theory, Plaintiffs must plead that the statements "specifically" identified or singled them out, or was understood as "referring to [them] in particular." Sims, 20 Wn. App. at 236.

Here, Plaintiffs have not done so, and the Court finds that Councilmember Sawant's statements do not satisfy the "of and concerning" requirement. According to the SAC, Councilmember Sawant, while standing in front of the Seattle Police Department, stated that "the police" committed a "brutal murder" which was "racially motivated." (Dkt. No. 23 at ¶¶ 46, 54.) Councilmember Sawant did not identify Officers Miller and Spaulding by name, nor did she provide any information that would even remotely allow listeners to ascertain their identities, such as their rank or position, division or unit, precinct, or length of time on the force. Finally, Councilmember Sawant's statements referred broadly to "the police," the "Seattle Police Department," and "systematic police brutality and racial profiling." (Id. at ¶¶ 43-46, 54-55; see also Dkt. No. 27 at ¶¶ 4-5.)

While Plaintiffs contend that Councilmember Sawant "continually brings it back to *these specific officers* and *this specific incident*" (Dkt. No. 27 at 7-8) (emphasis in original) her references to "holding the Seattle Police Department accountable for their reprehensible actions, individual actions" and seeking "justice on the individual actions" do not clearly establish Officers Miller and Spaulding as their target. See Sims, 20 Wn. App. at 237 ("[T]he plaintiff must show with *convincing clarity* that he was the target of the statement.") (emphasis added). That the Seattle Times contemporaneously published an article identifying Officers Miller and Spaulding by name does not change this outcome. The "identification of the plaintiff[s] as the

person[s] defamed" must be "certain and apparent *from the words themselves*," without reference to extrinsic sources. Id. at 234 (emphasis added); see also Vantassell-Matin v. Nelson, 741 F. Supp. 698, 709 (N.D. Ill. 1990) (explaining that plaintiffs "may not resort to proof of extrinsic facts, other than those essential to understand the context in which a statement was made to establish the defamatory nature of a statement not otherwise facially defamatory.") (internal quotation marks and citation omitted). Finally, even if Plaintiffs were correct that the references to "individual actions," coupled with their identification in the Seattle Times, could somehow transform what are otherwise vague and oblique statements into actionable defamation, the SAC does not plead *any* of these facts.

Because Plaintiffs have failed to satisfy the "of and concerning" requirement, the Court GRANTS the Motion to Dismiss with respect to the defamation claims.

### B. Outrage

In the absence of a claim for defamation against Councilmember Sawant, Plaintiffs' claim of outrage also fails. The elements of the tort of outrage are (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff. Robel v. Roundup Corp., 148 Wn.2d 35, 51 (2002) (en banc). The extreme or outrageous conduct identified in the SAC is the alleged defamation, which claim has been dismissed. An outrage claim based on the same facts as an unsuccessful defamation claim "cannot survive as an independent cause of action." Harris, 315 F. Supp. 2d at 1112 (quoting Leidholdt v. L.F.P. Inc., 860 F.2d 890, 893 n.4 (9th Cir. 1988)).

The Court GRANTS the Motion to Dismiss with respect to the outrage claim.

1         **C. Leave to Amend**

In general, dismissal with prejudice and without leave to amend is not appropriate unless it is clear "that the complaint could not be saved by any amendment." Polich v. Burlington Northern, Inc., 942 F.2d 1467, 1472 (9th Cir. 1991). While there is a "strong policy in favor of allowing amendment," Royal Ins. Co. of Am. v. Southwest Marine, 194 F.3d 1009, 1016 (9th Cir. 1999) (citation omitted), leave need not be granted where the amendment is sought in bad faith, would prejudice the opposing party, would result in undue delay, or is futile. Id. "Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

Here, the Court finds that granting Plaintiffs leave to amend their complaint would prejudice the Defendants and would be futile. First, this case has been pending for nearly a year, and Plaintiffs have already filed two amended complaints. (See Dkt. Nos. 9, 23.) Second, despite the public availability of video recordings of the allegedly defamatory statements and despite the Court's September 2018 Order requiring that it do so, Plaintiffs' SAC still does not set forth the *specific* statements alleged to be false and defamatory. (See Dkt. No. 27 at ¶¶ 4-5; see also Alex Garland, *Almost 100 Protesters Gathered Outside SPD Headquarters Today Demanding Answers About the Death of Che Taylor*, The Stranger (Feb. 25, 2016, 4:42 PM) *available at* www.thestranger.com/slog/2016/02/25/23623738/several-dozen-protesters-gathered-outside-spd-headquarters-today-demanding-answers-about-the-death-of-che-taylor; KIRO News, *Rally and Vigil for Charleena Lyles* (June 20, 2017, 6:03 PM) *available at* www.facebook.com/KOMONews/videos/1475312605870400. Most importantly, even if the Court were to grant Plaintiffs leave to amend to include these statements, they cannot satisfy the

"of and concerning" requirement, and Plaintiffs make no effort to explain how they could resolve this deficiency, or how additional discovery could possibly uncover additional actionable statements.  See, e.g., Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1051-52 (9th Cir. 2008) (concluding that amendment would be futile where plaintiffs already filed an amended complaint containing the same defects as their original complaint and failed to state "what additional facts they would plead if given leave to amend, or what additional discovery they would conduct to discover such facts").

The Court concludes that the SAC should be dismissed with prejudice and without leave to amend.

**Conclusion**

For the foregoing reasons, the Court ORDERS as follows:

(1) The Court GRANTS Plaintiffs' Motion to Strike;

(2) The Court GRANTS Defendant Councilmember Sawant's Motion to Dismiss with prejudice, and hereby dismisses Councilmember Sawant from this matter;

(3) The remaining claims in this matter shall proceed solely against Defendant City of Seattle; and

(4) The parties are ordered to comply with the case deadlines as set forth at Dkt. No. 17, and shall file the required initial disclosures, Joint Status Report, and Discovery Plan in accordance with this schedule.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 1, 2019.

Marsha J. Pechman
United States Senior District Judge