UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT MILLER, and MICHAEL SPAULDING, | CASE NO. C18-506 MJP |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | |
| KSHAMA SAWANT, | |
| Defendant. | |

This matter comes before the Court on Defendant Kshama Sawant's Motion to Dismiss Plaintiffs' Third Amended Complaint. (Dkt. No. 57.) Having reviewed the Motion, Plaintiffs' Opposition (Dkt. No. 59), Defendant's Reply (Dkt. No. 65), and all supporting papers, the Court GRANTS the Motion and DISMISSES all claims WITH PREJUDICE.

**BACKGROUND**

The Parties are well acquainted with the allegations Officers Scott Miller and Michael Spaulding make against Councilmember Kshama Sawant—this is now Plaintiffs' fourth attempt to plead actionable claims. The Ninth Circuit affirmed this Court's determination that the Second

1   Amended Complaint (SAC) lacked sufficient allegations that the statements Councilmember

2   Sawant made were "of and concerning" Plaintiffs. <u>Miller v. Sawant</u>, D.C. No. 19-35228,

3   Memorandum Disposition at 4 (9th Cir. Apr. 8, 2020) (Dkt. No. 46) ("Memorandum") ("Here,

4   the operative complaint does not plead any facts to show that Sawant's remarks can reasonably

5   be understood to refer to Plaintiffs.") But the Ninth Circuit reversed dismissal with prejudice,

6   giving Plaintiffs leave "to plead additional facts to show that Sawant's remarks can reasonably

7   be understood as referring to them, such as who heard the remarks, and whether anyone

8   identified Plaintiffs as the subject of them. . . ." <u>Id.</u> at 5. Plaintiffs were also permitted to "plead

9   extrinsic facts to show that Sawant's statements were 'of and concerning' them." <u>Id.</u> at 5 n.3

10   (citing <u>Purvis v. Bremer's, Inc.</u>, 54 Wn.2d 743 (1957)).

11         The Third Amended Complaint (TAC) remains virtually identical to the SAC. Plaintiffs

12   have added five new paragraphs containing: (1) the two statements at issue (TAC ¶¶ 37, 47); (2)

13   allegations that the general public could identify Plaintiffs from the statements (TAC ¶¶ 46, 48);

14   and (3) allegations that family and friends were able to identify Plaintiffs from the remarks (TAC

15   ¶¶ 45, 48). The present Motion requires an analysis of Councilmember Sawant's two statements.

16   She made the first shortly after the Police shot Che Taylor during an encounter:

17-22
> ***This is dramatic racial injustice***, in this city and everywhere in this nation. ***The brutal murder of Che Taylor, just a blatant murder at the hands of the police***, show how urgently we need to keep building our movement for basic human rights for black people and brown people. I want to let you know that I stand here both as an elected official, as a brown person, as an immigrant woman of color, and as someone who has been in solidarity with the Black Lives Matter movement, and our movement for racial, economic and social justice.…
> And I am here as an elected official because I am completely committed, unambiguously committed, to holding the Seattle Police Department accountable for ***their reprehensible actions, individual actions***. ***We need justice on the individual actions*** and we need to turn the tide on the systematic police brutality and ***racial profiling***.

(TAC ¶ 37 (emphasis in TAC).) Over a year later, Councilmember Sawant made the second statement at issue:

> I join the NAACP in demanding such a transparent public hearing. **When Che Taylor was murdered by the police**, the community and I demanded such a hearing from the Mayor and from Council member Gonzalez whose committee oversees the SPD, but neither the Mayor nor Council member Gonzalez responded. In . . . in light of the horrific killing of Charleena now I again urge…I publicly urge the City Council to hold such a hearing. I have also earlier today sent a number of important questions to the SPD.
>
> . . . We demand that the City of Seattle appoint an independent committee to review this case . . . with . . . with full public accountability. **We cannot rely on the existing process to determine why Charleena was killed because that process has failed Che Taylor. . . that process has failed every person who was killed at the hands of the Police**. Sisters and brothers, I will add one more thing for our movement that is standing with Charleena to think about, a deeply unequal society such as ours also implies that **the lives of poor and low-income people, black and brown people, homeless people, those who have mental health issues and challenges . . . the system treats our lives as expendable**.

(TAC ¶ 47 (emphasis in TAC).)

The Court has considered both statements in dismissing the SAC. See Order Granting Defendant's Motion to Dismiss the SAC at 4 (Dkt. No. 36) ("Order"). So, too, did the Ninth Circuit. See Memorandum at 4 n.2. But the Court has not considered the specific allegations in Paragraphs 45, 46, and 48, which Plaintiffs made to show that Councilmember Sawant's statements could "reasonably be understood as referring to them." See Memorandum at 5.

## ANALYSIS

**A.    Legal Standard**

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th Cir. 2016). In ruling on a Rule 12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint in the light most favorable to the non-movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc.,

1    135 F.3d 658, 661 (9th Cir. 1998). The complaint "must contain sufficient factual matter,

2    accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

3    U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

4          Despite this otherwise liberal pleading standard, the Ninth Circuit has held that courts

5    should consider First Amendment concerns even at the pleading stage. "[W]here a plaintiff seeks

6    damages . . . for conduct which is prima facie protected by the First Amendment, the danger that

7    the mere pendency of the action will chill the exercise of First Amendment rights requires more

8    specific allegations than would otherwise be required." Flowers v. Carville, 310 F.3d 1118, 1130

9    (9th Cir. 2002) (quoting Franchise Realty Interstate Corp. v. S.F. Local Joint Exec. Bd. of

10   Culinary Workers, 542 F.2d 1076, 1082-83 (9th Cir. 1976)). "Defamation claims, in particular,

11   must be advanced with sufficient specificity," Harris v. City of Seattle, 315 F. Supp. 2d 1112,

12   1123 (W.D. Wash. 2004), including "the precise statements alleged to be false and defamatory,

13   who made them and when," Flowers, 310 F.3d at 1130.

14   **B.     Defamation Elements and Standard**

15         The elements of a defamation claim are (1) a false statement; (2) lack of privilege; (3)

16   fault; and (4) damages. Herron v. KING Broadcasting Co., 112 Wn.2d 762, 776 (1989). The First

17   Amendment further requires that the challenged statement be made "of and concerning" the

18   plaintiff. See New York Times Co. v. Sullivan, 376 U.S. 254, 288-92 (1964); Sims v. KIRO, Inc.,

19   20 Wn. App. 229, 233 (1978).

20         Whether a statement satisfies the "of and concerning" requirement is a question of

21   "constitutional dimension" which "should ordinarily be resolved at the pleading stage." Gilman

22   v. Spitzer, 902 F. Supp. 2d 389, 394 (S.D.N.Y. 2012) (citations omitted). In determining whether

23   the "of and concerning" requirement has been satisfied, "[i]t is not necessary that the plaintiff be

24

mentioned by name in order to recover damages." Camer v. Seattle Post-Intelligencer, 45 Wn. App. 29, 37 (1986). However, "[t]he defamatory character of the language used must be certain and apparent from the words themselves, and so must the identification of the plaintiff as the person defamed." Sims, 20 Wn. App. at 234 (citation omitted). "One cannot by implication identify himself as the target of an alleged libel if the allegedly false statement does not point to him." Id. (citation omitted). Where a defamatory statement concerns a group or class of persons, a member may sustain a claim for defamation "but only if (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or (b) the circumstances of [the statement] reasonably give rise to the conclusion that there is particular reference to the member." Id. at 236 (citing Restatement (Second) of Torts § 564A (1977)); see also Barger v. Playboy Enterprises, Inc., 564 F. Supp. 1151, 1153 (N.D. Cal. 1983) ("If the group is small and its members easily ascertainable, plaintiffs may succeed. But where the group is large—in general any group numbering over twenty-five members—the courts . . . have consistently held that plaintiffs cannot show that the statements were 'of and concerning them.'") (citations omitted). In other words, whether proceeding under an individual or group theory, Plaintiffs must plead that the statements "specifically" identified or singled them out, or was understood as "referring to [them] in particular." Sims, 20 Wn. App. at 236.

As the Ninth Circuit's Memorandum notes, Plaintiffs may plead "extrinsic facts to show that Councilmember Sawant's statements were 'of and concerning' them." Memorandum at 5 n.3. "While the reasonable meaning of published words cannot be altered or extended by the pleading of innuendo, the pleader may be able to add meaning to words by a pleading of the circumstances surrounding the publication." Purvis, 54 Wn.2d at 751-52; see Memorandum at 5 n.3. The scope of extrinsic facts is not limitless—such evidence must contextualize "the sense in

1  which [the statement] would ordinarily be understood by [the listening public].” Purvis, 54

2  Wn.2d at 751. For example, in Purvis the “extrinsic” evidence was simply additional text from

3  the same advertisement that contained the language the plaintiff alleged was libelous. Id. at 754.

4  Extrinsic facts are thus limited to “those essential to understand the context in which a statement

5  was made to establish the defamatory nature of a statement not otherwise facially defamatory.”

6  Vantassell-Martin v. Nelson, 741 F. Supp. 698, 709-10 (N.D. Ill. 1990) (citation and quotation

7  omitted). And “where a speaker is meticulous enough to preserve the anonymity of an individual

8  about whom damaging information is given, the speaker should not be exposed to liability for

9  defamation because someone else ferrets out the identity of the individual and couples it with the

10  speaker’s statement in a later publication.” Id. at 710. “In that scenario the speaker’s words

11  cannot be characterized as having been “of and concerning” the plaintiffs.” Id.

12  **C.    Plaintiffs Have Not Pleaded Actionable Defamation Claims**

13         In resolving the pending Motion, the Court must determine whether the scant additional

14  allegations satisfy Plaintiffs’ burden to show the statements are “of and concerning” them. The

15  Court finds they do not.

16         First, the inclusion of Councilmember Sawant’s two statements do not satisfy Plaintiffs’

17  burden. (See TAC ¶¶ 37, 47.) Both this Court and the Ninth Circuit already considered these

18  statements and found them inadequate to show that they were “of and concerning” Plaintiffs. See

19  Order at 8-9; Memorandum at 4.

20         Second, the allegations about the general public’s understanding of Councilmember

21  Sawant’s statements do not plausibly show that they are “of and concerning” Plaintiffs. The

22  Court has already considered the Seattle Times’ article published the same day as

23  Councilmember Sawant’s first remarks about, among other things, “holding the Seattle Police

24  Department accountable for their reprehensible actions, individual actions” in the “blatant murder at

the hands of the police." <u>See</u> Order at 8-9; (TAC ¶ 37); <u>see also</u> Memorandum at 4 n.2. The Court remains unconvinced that the allegations about this article satisfies Plaintiffs' burden. The statements Councilmember Sawant made do not target or single out Plaintiffs or any specific officers, but rather speak to broader issues of police accountability. And the TAC does not allege that the article identified Plaintiffs as the <u>only</u> police involved or some other facts to show that the statement "would ordinarily be understood by [the listening public]" to refer to Plaintiffs specifically, and not the Police more generally. <u>See</u> <u>Purvis</u>, 54 Wn.2d at 751. Even if the article had, it would not change the fact that the statement does not target any particular officer involved in the shooting—rather it speaks to broader issues and targets the Police more generally.

Third, Plaintiffs' additional allegations concerning Councilmember Sawant's second statement made over a year later fare no better. In those remarks, Councilmember Sawant stated, among other things, that "Che Taylor was murdered by the police" as part of her demand for "a transparent public hearing" "with full public accountability" to address "the existing process . . . that has failed Che Taylor . . . that process that has failed every person who was killed at the hands of the Police." (TAC ¶ 47.) Plaintiffs allege that "[m]embers of the general public who read this statement . . . understood that it was directed at Officers Miller and Spaulding because their identities and involvement in the Che Taylor shooting had been published and widely circulated in the media for more than a year." (TAC ¶ 48.) But this vague allegation does not identify any of the "numerous news articles" or widely-circulated "media" or how any such publications would permit the public to know that these remarks refer to Plaintiffs. This new allegation does not convert Councilmember Sawant's broad-brush remarks about public accountability into a specific statement that could reasonably be understood to be "of and concerning" Plaintiffs. <u>See</u> Order at 8.

Fourth, Plaintiffs invoke as extrinsic evidence the knowledge held by their family and friends who knew they were "the only 'police' that were involved in the shooting." (TAC ¶¶ 45,

48.) While extrinsic evidence can be considered to contextualize "the reasonable meaning of published words" it cannot be used to "alter[] or extend[]" the words by "pleading of innuendo." Purvis, 54 Wn.2d at 751-52. Plaintiffs' extrinsic evidence attempts to over-extend and alter the reasonable meaning or understanding of Councilmember Sawant's remarks. Taken in their full quoted context, the broad statements do not single out individual police officers or speak to labelling specific officers as "murderers." So the unique information held by family and friends about Plaintiffs' role in the shooting of Che Taylor cannot said to be "essential to understand the context" of Councilmember Sawant's statement. Vantassell-Martin, 741 F. Supp. at 709. Contextualizing Councilmember Sawant's statements with unique information held by family and friends would impermissibly alter the meaning of the otherwise non-individualized statements. Vantassell-Martin, 741 F. Supp. at 710 (merely "because someone else ferrets out the identity of the individual and couples it with the speaker's statement" does not show a statement was "of and concerning" the plaintiff). These allegations do not satisfy Plaintiffs' burden.

Plaintiffs cite to several cases to support the proposition that the "of and concerning" element is satisfied if just one friend or family member can identify them from the statement. The cases cited are legally and factual distinguishable.

First, Plaintiffs selectively quote from Spangler v. Glover to suggest that a statement is "of and concerning" the plaintiff merely if "persons knowing him could and did understand that he was the one referred to in the publication." 50 Wn.2d 473, 480 (1957); Pls. Opp. at 15-16. But Plaintiffs' citation omits the fact that this rule applies only if there is an "intrinsic reference" to the plaintiff or if the plaintiff is "pointed out" from the words themselves. Spangler, 50 Wn.2d at 480 ("[I]t is not necessary that the person defamed be named in the publication if, by intrinsic reference, the allusion is apparent or if the publication contains matters of description or

1    reference to facts and circumstances from which others may understand that the complainant is

2    the person referred to, <u>or if he is pointed out</u> so that the persons knowing him could and did

3    understand that he was the one referred to in the publication." (emphasis added)) This case does

4    not aid Plaintiffs. Councilmember Sawant's words themselves do not intrinsically reference

5    Plaintiffs and do not "point out" Plaintiffs from the Police in general.

6         Second, <u>Olympia Waterworks v. Mottman</u>, 88 Wash. 694 (1915) is factually

7    distinguishable. <u>See</u> Pls. Opp. at 16. In <u>Mottman</u> the defamatory remarks derided the quality of

8    water provided to Olympia. <u>Id.</u>, 88 Wash. at 695-96. This necessarily referred to the plaintiff

9    because it was the only such water provider. <u>Id.</u> at 696-97. But here no such similar conclusion

10   or deduction can be made from Councilmember Sawant's remarks themselves because they

11   speak of the Police generally and cannot reasonably be understood to refer to Plaintiffs. (TAC ¶¶

12   37, 47.) Nor did the court in <u>Mottman</u> suggest that the unique knowledge held by a few could

13   serve as proper context to understand otherwise general statements that do not single out any

14   specific person from a field of many potential subjects.

15        Third, Plaintiffs rely on <u>Golden N. Airways v. Tanana Publ'g Co.</u>, 218 F.2d 612, 616 (9th

16   Cir. 1954) for the proposition that a statement is "of and concerning" a specific individual if it

17   "'should have been understood by at least one third person to have concerned him.'" (Pls. Opp.

18   at 15 (quoting <u>Golden</u>, 218 F.2d at 622).) But in <u>Golden</u> the libelous statement referred to "non-

19   scheduled" air carriers which had "a popular meaning and included a small group of not to

20   exceed five or ten companies in Alaska of which [plaintiff was] . . . one." 218 F.2d at 616. As

21   such, the obvious meaning of the words "non-scheduled" was that it referred to a limited, small

22   group. But here no such similar "popular meaning" can be inferred from Councilmember

23   Sawant's remarks about the Police in general. As the Court in <u>Golden</u> explained, "'The courts

24

1    have chosen not to limit freedom of public discussion except to prevent harm occasioned by

2    defamatory statements reasonably susceptible of special application to a given individual.'" Id. at

3    620 (quoting Service Parking Corp. v. Washington Times Co., 67 App. D.C. 351, 92 F.2d 502,

4    505-506 (1937)). Here, the allegations about the unique knowledge of family and friends do not

5    support a conclusion that the allegedly "defamatory statements [were] reasonably susceptible of

6    special application to" Plaintiffs. See id.

7        Fourth, Plaintiffs misplace reliance on both Hansen v. Stoll, 130 Ariz. 454, 636 P.2d

8    1236 (Ct. App. 1981) and Mullins v. Brando, 13 Cal. App. 3d 409, 91 Cal. Rptr. 796 (Ct. App.

9    1970). Both are factually distinguishable because the statements in each specifically targeted the

10   plaintiff officers or agents, though not by name. In Hansen, the court found that the "of and

11   concerning" element was satisfied where the defendant's statements named five of seven agents

12   and specifically targeted the two unnamed agents, all of whom were involved in a drug-related

13   incident. See Hansen, 130 Ariz at 457. Hansen is distinguishable because Councilmember

14   Sawant's statements themselves do not single out the officers involved. (See TAC ¶¶ 37, 47.)

15   Similarly, in Mullins the defendant's remarks targeted the specific actions of the officers

16   involved in a controversial shooting. Mullins, 13 Cal. App. 3d at 419, 91 Cal. Rptr. 796, 802 (Ct.

17   App. 1970) ("The very purpose of the individual plaintiffs' criticized allegation is to lay a basis

18   for their contention that they are not just run-of-the-mill members of a large group and that

19   defendant did zero in on them as ascertainable persons."). This case is distinguishable for same

20   reason as Hansen because Councilmember Sawant's remarks did not "zero[] in on" Plaintiffs.

21   See id.

22       None of the "extrinsic evidence" Plaintiffs have added to their TAC satisfies their burden

23   to show that Councilmember Sawant's remarks could reasonably be understood to be "of and

24

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 10

1   concerning" them, and not the Police more generally. The Court GRANTS the Motion and

2   DISMISSES the defamation claims.

3   **D.    Plaintiffs' Additional Evidence**

4          Plaintiffs filed four declarations in support of their opposition to the Motion to Dismiss.

5   The declarations are not incorporated by reference into the TAC and Plaintiffs do not cite to any

6   authority permitting the Court's consideration of them. Plaintiffs admit the declarations are

7   "technically not necessary" but claim they are provided to "forestall" summary judgment and

8   "corroborate" the allegations in the TAC. (Pls. Opp. at 9 n.4 and 16 n.11.) The submissions are

9   not just unnecessary, they are not properly considered in ruling on a motion to dismiss. See Fed.

10  R. Civ. P. 12(b)(6); Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018). The

11  Court has not considered them in reaching its decision and declines to sua sponte convert the

12  Motion into a motion for summary judgment. See Fed. R. Civ. P. 12(d).

13         Even if the Court did consider the declarations, they would not alter its decision. These

14  declarations merely show that some people can "ferret[] out the identity of" Plaintiffs "and

15  couple[] it with the speaker's statement." Vantassell-Matin, 741 F. Supp. at 710. But, as

16  explained above, this does not satisfy the burden to plead that the words themselves, taken in

17  their proper context could reasonably be understood to be "of and concerning" Plaintiffs.

18  **E.    Plaintiffs' Outrage Claim Similarly Fails**

19         Because Plaintiffs' outrage claim requires a viable defamation claim against

20  Councilmember Sawant, it, too, fails. See Harris, 315 F. Supp. 2d at 1112 (quoting Leidholdt v.

21  L.F.P. Inc., 860 F.2d 890, 893 n.4 (9th Cir. 1988)). The Court GRANTS the Motion and

22  DISMISSES the outrage claim.

23

24

1

**F.     Dismissal with Prejudice**

2          Although none of the Parties addresses this issue, the Court finds dismissal of the claims

3  with prejudice to be appropriate.

4          In general, dismissal with prejudice and without leave to amend is not appropriate unless

5  it is clear "that the complaint could not be saved by any amendment." Polich v. Burlington

6  Northern, Inc., 942 F.2d 1467, 1472 (9th Cir. 1991). While there is a "strong policy in favor of

7  allowing amendment," Royal Ins. Co. of Am. v. Southwest Marine, 194 F.3d 1009, 1016 (9th

8  Cir. 1999) (citation omitted), leave need not be granted where the amendment is sought in bad

9  faith, would prejudice the opposing party, would result in undue delay, or is futile. Id. "Under

10  Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint

11  can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit

12  entirely." Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

13          The Court finds that leave to amend would be futile. Plaintiffs have now had four

14  opportunities in this Court to allege actionable defamation claims. Despite being given leave to

15  correct the deficiencies in the SAC by the Ninth Circuit, Plaintiffs added a mere five paragraphs

16  of allegations, none of which rectifies the problems identified by this Court and the Ninth

17  Circuit. Plaintiffs have not asked for leave to amend and they have not identified what more they

18  could or would add if given a fifth opportunity. Even if they were to include the information

19  contained in the declarations filed in opposition, that would not change the Court's

20  determination. Amendment would be futile and further litigation prejudicial to Defendant.

21  Accordingly, the Court DISMISSES this action WITH PREJUDICE.

22

23

24

1

**CONCLUSION**

2

Plaintiffs have not saved their defamation and outrage claims through the addition of

3 extrinsic evidence. These additional allegations do not support a conclusion that Councilmember

4 Sawant's remarks could reasonably be understood to be "of and concerning" Plaintiffs, and not

5 the Police and "the process" more generally. Plaintiffs' claims fail as a matter of law and no

6 amendment appears possible to save them. The Court GRANTS the Motion to Dismiss and

7 DISMISSES all claims against Councilmember Sawant WITH PREJUDICE.

8

The clerk is ordered to provide copies of this order to all counsel.

9

Dated December 29, 2020.

10

11

Marsha J. Pechman
United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 13