**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SCOTT MILLER, an individual; MICHAEL SPAULDING, an individual, *Plaintiffs-Appellants*, <br><br> v. <br><br> KSHAMA SAWANT, an individual, *Defendant-Appellee*, <br><br> and <br><br> CITY OF SEATTLE, a municipal corporation, *Defendant.* | No. 21-35004 <br><br> D.C. No. 2:18-cv-00506-MJP <br><br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted October 4, 2021
Seattle, Washington

Filed November 10, 2021

Before:  A. Wallace Tashima, Milan D. Smith, Jr., and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Defamation

The panel reversed the district court's dismissal of an action brought by Seattle police officers who alleged they were defamed by Defendant Kshama Sawant, a member of the Seattle City Council, through comments Sawant made about a deadly police shooting in which Plaintiffs were involved.

The district court dismissed Plaintiffs' defamation claims on the ground that their third amended complaint failed adequately to allege that Sawant's remarks were "of and concerning" them.  In reversing the district court, the panel first determined that Sawant's own words suggested that her remarks were directed not only at the police generally, but also at the individual officers involved in the shooting.  She told the crowd that the shooting constituted "a blatant murder at the hands of the police," and she called for the Seattle Police Department to be held accountable "for their . . . individual actions."  Second, the complaint plausibly alleged that some of those who read or heard Sawant's remarks—Plaintiffs' families, friends, and colleagues, as well as

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

members of the general public—knew that Plaintiffs were the officers involved in the shooting.   Third, the complaint plausibly alleged that these readers and listeners understood that Sawant's remarks were directed at Plaintiffs.  The panel held that under the governing federal pleading standard, Plaintiffs plausibly alleged that Sawant's communications were of and concerning them.

The panel disagreed with the district court's conclusion that no reasonable person could conclude that Sawant's remarks concerned the individual officers but rather spoke to broader issues of police accountability.  The panel held that at most, the district court identified one reasonable interpretation of Sawant's words, not the only reasonable interpretation.  Where a communication is capable of two meanings, one defamatory and one not, it is for a jury, not a judge, to determine which meaning controls. Here, Sawant's words reasonably carried with them the defamatory meaning Plaintiffs had assigned to them.  Accordingly, the panel reversed the district court's judgment and remanded for further proceedings.

---

## COUNSEL

Sean T. James (argued) and Daniel A. Brown, Williams Kastner, Seattle, Washington, for Plaintiffs-Appellants.

James E. Lobsenz (argued), Carney Badley Spellman B.S., Seattle, Washington; Dmitri Iglitzin and Gabriel Frumkin, Barnard Iglitzin & Lavitt LLP, Seattle, Washington; for Defendant-Appellee.

## OPINION

TASHIMA, Circuit Judge:

Plaintiffs Scott Miller and Michael Spaulding ("Plaintiffs") are Seattle police officers who claim they were defamed by Defendant Kshama Sawant, a member of the Seattle City Council, through comments Sawant made about a deadly police shooting in which Plaintiffs were involved. The district court dismissed Plaintiffs' defamation claims on the ground that their third amended complaint ("complaint" or "TAC") failed adequately to allege that Sawant's remarks were "of and concerning" them.  We reverse.

Under the governing federal pleading standard, Plaintiffs plausibly have alleged that Sawant's communications were of and concerning them.  First, Sawant's own words suggest that her remarks were directed not only at the police generally, but also at the individual officers involved in the shooting.  She told the crowd that the shooting constituted "a blatant murder at the hands of the police," and she called for the Seattle Police Department to be held accountable "for their . . . individual actions."  TAC ¶ 37.  Second, the complaint plausibly alleges that some of those who read or heard Sawant's remarks—Plaintiffs' families, friends, and colleagues, as well as members of the general public—knew that Plaintiffs were the officers involved in the shooting. TAC ¶¶ 45–46, 48.  Third, the complaint plausibly alleges that these readers and listeners understood that Sawant's remarks were directed at Plaintiffs.  These allegations are sufficient.

In concluding otherwise, the district court reasoned that "[t]he statements Councilmember Sawant made do not target

or single out Plaintiffs or any specific officers, but rather speak to broader issues of police accountability." *Miller v. Sawant*, No. C18-506 MJP, 2020 WL 7714414, at *3 (W.D. Wash. Dec. 29, 2020).  At most, however, the district court has identified one reasonable interpretation of Sawant's words, not the only reasonable interpretation.  Where a communication is capable of two meanings, one defamatory and one not, it is for a jury, not a judge, to determine which meaning controls.  *See Swartz v. World Publ'g Co.*, 356 P.2d 97, 98 (Wash. 1960) (en banc).  As we explained in *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984), at this stage of the case, a "court's inquiry is not to determine if the communications may have an innocent meaning but rather to determine if the communication reasonably carries with it a defamatory meaning." *Id.* at 696 (quoting *Forsher v. Bugliosi*, 608 P.2d 716, 722 (Cal. 1980)). Here, Sawant's words reasonably carry with them the defamatory meaning Plaintiffs have assigned to them. Accordingly, we reverse the judgment and remand for further proceedings.

## I.

In February 2016, Plaintiffs shot and killed Che Taylor, a Black man, while attempting to make an arrest.  TAC ¶¶ 27–32.[1]  A few days after the shooting, Sawant told a crowd in front of the Seattle Police Department: "The brutal murder of Che Taylor, just a blatant murder at the hands of

---

[1] Plaintiffs assert that the shooting was lawful.  The complaint alleges that the Seattle Police Department, the City's Force Investigation Team, the City's Firearms Review Board, and an inquest convened by the King County prosecutor all cleared Plaintiffs of punishable wrongdoing.  TAC ¶¶ 50–57.

the police, show[s] how urgently we need to keep building our movement for basic human rights for black people and brown people." TAC ¶ 37. She called for the Police Department to be held "accountable for their reprehensible actions, individual actions. We need justice on the individual actions and we need to turn the tide on the systematic police brutality and racial profiling." *Id.*[2]  In June 2017, following the fatal police shooting of Charleena Lyles, another person

---

[2] According to the complaint, Sawant told the crowd:

> This is dramatic racial injustice, in this city and everywhere in this nation. The brutal murder of Che Taylor, just a blatant murder at the hands of the police, show how urgently we need to keep building our movement for basic human rights for black people and brown people. I want to let you know that I stand here both as an elected official, as a brown person, as an immigrant woman of color, and as someone who has been in solidarity with the Black Lives Matter movement, and our movement for racial, economic and social justice. . . .
>
> And I am here as an elected official because I am completely committed, unambiguously committed, to holding the Seattle Police Department accountable for their reprehensible actions, individual actions. We need justice on the individual actions and we need to turn the tide on the systematic police brutality and racial profiling.

TAC ¶ 37 (alteration in original).

of color, Sawant repeated her allegation that "Che Taylor was murdered by the police."  TAC ¶ 47.[3]

Plaintiffs filed this action against Sawant in 2018, claiming that she had defamed them by falsely accusing them

---

[3] According to the complaint, Sawant told the Lyles gathering:

> I join the NAACP in demanding such a transparent public hearing.  When Che Taylor was murdered by the police, the community and I demanded such a hearing from the Mayor and from Council member Gonzalez whose committee oversees the [Seattle Police Department ("SPD")], but neither the Mayor nor Council member Gonzalez responded.  In . . . light of the horrific killing of Charleena now I again urge . . . I publicly urge the City Council to hold such a hearing. I have also earlier today sent a number of important questions to the SPD.

> . . .  We demand that the City of Seattle appoint an independent committee to review this case . . . with full public accountability.  We cannot rely on the existing process to determine why Charleena was killed because that process has failed Che Taylor . . . that process has failed every person who was killed at the hands of the Police.  Sisters and brothers, I will add one more thing for our movement that is standing with Charleena to think about, a deeply unequal society such as ours also implies that the lives of poor and low-income people, black and brown people, homeless people, those who have mental health issues and challenges . . . the system treats our lives as expendable.

TAC ¶ 47 (some alterations in original).

of racial profiling and murder.[4]   Although Sawant had not identified Plaintiffs by name in her remarks, the complaint alleges that Plaintiffs' families, friends, and colleagues, as well as members of the general public, all knew that they were the officers who shot Taylor.   TAC ¶¶ 45–46, 48. Accordingly, Plaintiffs allege that Sawant's remarks were "of and concerning" them, as required to state a claim for defamation under Washington law.   TAC ¶ 69.

Specifically, with respect to Sawant's February 2016 remarks, the complaint alleges:

> 45.   Sawant's inflammatory statement achieved the desired effect and received substantial media coverage.  A video of her remarks, as well as the quote itself, were widely circulated in the media.  While Sawant did not identify Officers Miller and Spaulding by name, those familiar with the details of the Che Taylor shooting, including the officers' family, friends, and colleagues who heard or read Sawant's statement in the news understood it was directed at Officers Miller and Spaulding because they are the only "police" that were involved in the shooting

---

[4] The complaint seeks actual and punitive damages and alleges the following claims:  defamation, defamation *per se*, and outrage under Washington law; and federal defamation.  The parties agree that the sole issue on appeal is whether the complaint states claims for defamation under Washington law.  We therefore address solely that issue.  The parties also agree that the outrage claim is derivative of and rises or falls together with the defamation claims. They do not discuss the federal defamation claim.

and, thus, the only "police" to whom the statements could apply.

46. Members of the general public who read or heard Sawant's statement in the media also understood that it was directed at Officers Miller and Spaulding because the same day Sawant made the statement, the Seattle Times published an article that provided their names and identified them as "the police" that shot Che Taylor.

TAC ¶¶ 45–46.

Similarly, with respect to Sawant's June 2017 remarks, the complaint alleges:

48. This statement also received substantial media coverage. Again, the officers family, friends, and colleagues who heard or read this statement in the news understood that it was directed at Officers Miller and Spaulding because they are the only "police" that were involved in the shooting. Members of the general public who read this statement in any one of the numerous news articles that quoted it or saw the video recording of the statement that circulated online also understood that it was directed at Officers Miller and Spaulding because their identities and involvement in the Che Taylor

shooting had been published and widely circulated in the media for more than a year.

TAC ¶ 48.[5]

The district court dismissed Plaintiffs' defamation claims on the ground that the complaint failed plausibly to allege that Sawant's remarks were of and concerning them. *See Miller*, 2020 WL 7714414, at *3–4. The court concluded that "[t]he statements Councilmember Sawant made do not target or single out Plaintiffs or any specific officers, but rather speak to broader issues of police accountability." *Id.* at *3. The court further concluded that, because Sawant's "statements do not single out individual police officers," it was irrelevant that Plaintiffs' family, friends, and colleagues, and members of the general public, knew that Plaintiffs were the officers involved in the Taylor shooting and understood Sawant's remarks to be directed at Plaintiffs. *Id.* at *4. The court reasoned that "[c]ontextualizing Councilmember Sawant's statements with unique information held by family and friends would impermissibly alter the meaning of

---

[5] We take judicial notice of six newspaper articles, published between February 25, 2016 and March 2017, identifying Plaintiffs as the officers involved in the Taylor shooting. *See* Fed. R. Evid. 201. These articles are: Christine Clarridge, *'Black Lives Matter' Protesters Demand Firing of Police Chief after Fatal Shooting*, Seattle Times, Feb. 25, 2016; Elisa Hahn, *Che Taylor Was Reaching for a Gun, SPD Officer Testifies*, K5 News, Feb. 3, 2017; Elisa Hahn, *Second Seattle Officer Defends Shooting Che Taylor*, K5 News, Feb. 8, 2017; *Inquest Jury Backs Officers in Fatal SPD Shooting of Che Taylor*, KOMO News, Feb. 10, 2017; *Jury Finishes Inquest of 2 Seattle Police Officers Involved in Fatal Shooting*, Q13 Fox, Feb. 10, 2017; and Simone Alicea, *No Charges Against Seattle Cops Who Shot Che Taylor*, KNKX, Mar. 15, 2017.

[Sawant's] otherwise non-individualized statements." *Id.*[6]
Plaintiffs timely appealed.[7]

## II.

"We review *de novo* challenges to a dismissal for failure
to state a claim under Federal Rule of Civil Procedure
12(b)(6)." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir.

---

[6] In ruling on Sawant's Rule 12(b)(6) motion to dismiss, the district
court properly declined to consider Plaintiffs' testimonial
evidence—declarations from four individuals who testified that they
believed Sawant's statements were directed at Plaintiffs. *See Khoja
v.Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)
("Generally, district courts may not consider material outside the
pleadings when assessing the sufficiency of a complaint under Rule
12(b)(6) . . . ." (citation omitted)).

[7] This case was before us once before. In an earlier appeal, we
affirmed the dismissal of the second amended complaint, holding that it
did "not plead any facts to show that Sawant's remarks c[ould] reasonably
be understood to refer to Plaintiffs," but held that the district court abused
its discretion by denying leave to amend. *Miller v. Sawant*, 811 F. App'x
408, 410–11 (9th Cir. 2020). We held: "Because Plaintiffs may be able
to plead additional facts to show that Sawant's remarks can reasonably
be understood as referring to them, such as who heard the remarks, and
whether anyone identified Plaintiffs as the subject of them, we cannot say
that amendment would be futile." *Id.* at 411. In addition, we held that
"[t]he district court erred to the extent it concluded that Plaintiffs may not
plead extrinsic facts to show that Sawant's statements were 'of and
concerning' them." *Id.* at 411 n.3 (citing *Purvis v. Bremer's, Inc.*,
344 P.2d 705, 711 (Wash. 1959) (en banc)). The TAC, which is the
operative pleading on this appeal, differs from the second amended
complaint in two material respects: (1) it includes a transcription of
Sawant's actual remarks, rather than a sparse summary of them, TAC
¶¶ 37, 47; and (2) it includes the three paragraphs quoted above regarding
how families, friends, colleagues, and the general public understood
Sawant's remarks, TAC ¶¶ 45–46, 48.

2017).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### III.

### A.  Plaintiffs Need Not Plead the Of-and-Concerning Element with Convincing Clarity

The parties disagree about whether a heightened pleading requirement applies here.  We hold that it does not.

Under Washington law, "[t]he elements a plaintiff must establish in a defamation case are falsity, an unprivileged communication, fault, and damages."  *Mohr v. Grant*, 108 P.3d 768, 773 (Wash. 2005) (en banc).[8]  In addition, a plaintiff must "prove that the communication was made of and concerning him."  *Sims v. Kiro, Inc.*, 580 P.2d 642, 645 (Wash. Ct. App. 1978).  The parties disagree about the pleading standard applicable to this of-and-concerning element.  Plaintiffs maintain that the complaint need only plausibly allege that Sawant's statements were of and

---

[8] "[T]he standard of fault . . . depends on the nature of the plaintiff. If the plaintiff is a public figure or public official, he must show actual malice.  If, on the other hand, the plaintiff is a private figure, he need show only negligence."  *LaMon v. Butler*, 770 P.2d 1027, 1029 (Wash. 1989) (en banc).  Here, it has not been determined whether Plaintiffs are public or private figures.

concerning them. Sawant, by contrast, contends that Plaintiffs "must show with 'convincing clarity' that they were the target[s] of the challenged statement[s]." We agree with Plaintiffs.

First, the Washington cases upon which Sawant relies apply the convincing clarity standard only at summary judgment, not at the pleading stage. Although the Washington courts have held that "a defamation plaintiff resisting a defense motion for *summary judgment* must establish a prima facie case by evidence of convincing clarity," *Mark v. Seattle Times*, 635 P.2d 1081, 1089 (Wash. 1981) (en banc) (emphasis added), they have not applied this requirement outside the summary judgment context. They have made clear, for instance, that the convincing clarity standard does not apply at trial. As the Washington Supreme Court stated in *Duc Tan v. Le*, 300 P.3d 356 (Wash. 2013) (en banc), "[n]either the common law nor the First Amendment, as interpreted by the United States Supreme Court, requires proof of any element of a defamation action, other than actual malice, by evidence of convincing clarity." *Id.* at 366 n.5 (quoting *Richmond v. Thompson*, 922 P.2d 1343, 1352 (Wash. 1996) (en banc)).

Second, even if Sawant could show that Washington courts apply a convincing clarity standard at the pleading stage, that standard would not apply here. Pleading in federal court is governed by Federal Rules of Civil Procedure, not state pleading requirements. "Under the *Erie* doctrine, however, it is long since settled that federal courts sitting in diversity apply state substantive law and federal procedural law." *Hyan v. Hummer*, 825 F.3d 1043, 1046 (9th Cir. 2016) (internal quotation marks and citations omitted); *see also Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081,

1091 (9th Cir. 2004) ("[p]rocedural state laws are not used in federal court if to do so would result in a direct collision with a Federal Rule of Civil Procedure." (internal citations omitted.)  Moreover, "the Federal Rules of Civil Procedure impose no special pleading requirements for defamation." *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 n.2 (D.C. Cir. 1999).**⁹**  A plaintiff asserting a state-law defamation claim in federal court need only satisfy Rule 8; a state's heightened pleading requirement does not apply.  *See Church of Scientology*, 744 F.2d at 696 n.2; *see also Andresen v. Diorio*, 349 F.3d 8, 17 (1st Cir. 2003); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 925–26 (7th Cir. 2003).  As a leading treatise explains in

---

**⁹** Sawant suggests that defamation cases are subject to a heightened pleading requirement under *federal* procedural rules, citing *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers*, 542 F.2d 1076, 1082–83 (9th Cir. 1976), an antitrust case, where we held that "in any case, whether antitrust or something else, where a plaintiff seeks damages or injunctive relief, or both, for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required."  We questioned this holding's extension to defamation cases in *Flowers v. Carville*, 310 F.3d 1118, 1131 n.8 (9th Cir. 2002), citing the Supreme Court's statement in *Calder v. Jones*, 465 U.S. 783, 790–91 (1984), that it had "declined . . . to grant special procedural protections to defendants in libel and defamation actions in addition to the constitutional protections embodied in the substantive laws."  We noted, moreover, that "we have yet to apply *Franchise Realty* outside the *Noerr-Pennington* context."  *Flowers*, 310 F.3d at 1131 n.8.  But even assuming *Franchise Realty* imposes a heightened pleading requirement in defamation cases, the complaint in this case satisfies that requirement.  As we explained in *Flowers*, a defamation complaint is sufficient under *Franchise Realty* when it "lists the precise statements alleged to be false and defamatory, who made them and when."  *Id.* at 1131.  Plaintiffs' complaint meets this standard.

discussing defamation claims, "the basic philosophy of the Rule 8(a) requirement of a plain and concise statement of the claim for relief should not be sacrificed in order to follow state notions of pleading particularity or an antipathy toward certain claims for relief." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1245 (4th ed. 2021).[10]

Plaintiffs, therefore, need not plead the of-and-concerning element with convincing clarity. Instead, they "need only plead sufficient facts to make it plausible—not probable or even reasonably likely—that a reader familiar with each Plaintiff would identify him as the subject of the statements at issue." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 105 (2d Cir. 2017). As we explained in our earlier decision in this case, the complaint need only "plead . . . facts to show that Sawant's remarks can reasonably be understood to refer to Plaintiffs." *Miller*, 811 F. App'x at 410.

---

[10] Because the issue may arise on remand, we note that the same principle governs at summary judgment: a federal court must apply Federal Rule of Civil Procedure 56, rather than a state's heightened summary judgment standard, to claims arising under state law, *see Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001); *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994); *Caesar Elecs. Inc. v. Andrews*, 905 F.2d 287, 289 n.3 (9th Cir. 1990); *Bank of California, N.A. v. Opie*, 663 F.2d 977, 979 (9th Cir. 1981), including defamation claims, *see Doe v. Doe*, 941 F.2d 280, 287 (5th Cir.), *modified on other grounds*, 949 F.2d 736 (5th Cir. 1991). Thus, should the issue arise on remand, the district court should apply Rule 56.

## B. The Complaint Plausibly Alleges That Sawant's Statements Were Of and Concerning the Plaintiffs

### 1.

The district court rejected the complaint on the ground that no reasonable person could conclude that Sawant's remarks concerned the individual officers who shot Taylor. In the district court's view, "[t]he statements Councilmember Sawant made do not target or single out Plaintiffs or any specific officers, but rather speak to broader issues of police accountability." *Miller*, 2020 WL 7714414, at *3.[11]

We disagree.  First, although Sawant's remarks appear aimed, at least in part, at the police generally, some of her language suggests that her words refer specifically to the officers who shot Taylor.  Sawant asserted that Taylor's death

---

[11] *See also Miller*, 2020 WL 7714414, at *3 ("[T]he statement does not target any particular officer involved in the shooting—rather it speaks to broader issues and targets the Police more generally."); *id.* at *4 (the allegation that Plaintiffs had been identified in news stories as the officers involved in the shooting "does not convert Councilmember Sawant's broad-brush remarks about p[olice] accountability into a specific statement that could reasonably be understood to be 'of and concerning' Plaintiffs"); *id.* ("Councilmember Sawant's words themselves do not intrinsically reference Plaintiffs and do not 'point out' Plaintiffs from the Police in general."); *id.* ("Councilmember Sawant's remarks . . . speak of the Police generally and cannot reasonably be understood to refer to Plaintiffs."); *id.* (concluding that Sawant's "general statements . . . do not single out any specific person from a field of many potential subjects"); *id.* at *5 ("Councilmember Sawant's statements themselves do not single out the officers involved."); *id.* ("None of the 'extrinsic evidence' Plaintiffs have added to their TAC satisfies their burden to show that Councilmember Sawant's remarks could reasonably be understood to be 'of and concerning' them, and not the Police more generally.").

was "a blatant murder at the hands of the police," and she called for the police to be held "accountable for their reprehensible actions, their individual actions. We need justice on the individual actions . . . ." TAC ¶ 37. This language   suggests that Sawant was singling out Plaintiffs—characterizing them as murderers and calling for them to be held individually accountable.[12]

In addition, apart from Sawant's own words, the TAC alleges that persons who heard or saw Sawant's remarks understood that they referred to Plaintiffs.

> 45. While Sawant did not identify Officers Miller and Spaulding by name, those familiar with the details of the Che Taylor shooting, including the officers' family, friends, and colleagues who heard or read Sawant's statement in the news[,] understood it was directed at Officers Miller and Spaulding because they are the only 'police' that were

---

[12] Citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16–17 (1990), and *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 13–14 (1970), Sawant suggests that she may have used the word "murder" as "rhetorical hyperbole," noting that the word need not be "read literally" as accusing Plaintiffs "of committing a crime. This argument does not affect our analysis. First, a reasonable person could conclude that Sawant intended the word to be taken literally. Second, a communication need not accuse another person of a crime in order for it to be defamatory. *See* Restatement (Second) of Torts § 559 (1977) ("A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."). Although falsely accusing someone of a crime may constitute defamation *per se*, *Davis v. Fred's Appliance, Inc.*, 287 P.3d 51, 61 (Wash. Ct. App. 2012), a communication need not impute criminal conduct to be defamatory.

involved in the shooting and, thus, the only
'police' to whom the statements could apply.

TAC ¶ 45.  These allegations are neither conclusory nor
implausible.  Hence, they are entitled to a presumption of
truth at this stage of the proceedings.  *Iqbal*, 556 U.S.
at 678–79.  Indeed, they are precisely the kind of allegations
that we previously said Plaintiffs could rely on plausibly to
plead the of-and-concerning element.  *See Miller*, 811 F.
App'x at 411 ("Because Plaintiffs may be able to plead
additional facts to show that Sawant's remarks can reasonably
be understood as referring to them, *such as who heard the
remarks, and whether anyone identified Plaintiffs as the
subject of them*, we cannot say that amendment would be
futile." (emphasis added)).  Like Sawant's own words, these
allegations support the inference that Sawant's remarks can
reasonably be understood to refer to Plaintiffs.

It may be, as the district court surmised, that *some*
listeners or readers would understand Sawant's remarks as
communicating *solely* criticism of the police generally.  But
that is only one reasonable meaning of the remarks, not *the
only* such meaning.  As we explained in *Church of
Scientology*, the "court's inquiry is not to determine if the
communications may have an innocent meaning but rather to
determine if the communication reasonably carries with it a
defamatory meaning."  744 F.2d at 696 (quoting *Forsher*,
608 P.2d at 722).  A court determines only whether a
communication is *capable* of defamatory meaning, while
"[t]he jury determines whether a communication, capable of
a defamatory meaning, was so understood by its recipient."
Restatement (Second) of Torts § 614 (1977); *accord Swartz*,
356 P.2d at 98.

For the above reasons, we hold that the TAC plausibly pleads that Sawant's statements were of and concerning Plaintiffs.  The district court erred by ruling otherwise.

**2.**

Sawant's arguments to the contrary lack merit.

**a.**

We reject Sawant's argument that this case is controlled by *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).  In *Sullivan*, the plaintiff argued that an advertisement was "of and concerning" him because it criticized certain acts of the police department, which he oversaw in his capacity as a city commissioner.   The Supreme Court held that there was insufficient evidence to show that the advertisement was of and concerning the plaintiff.  *Id.* at 288–92.  This conclusion turned on the fact that the plaintiff had no "personal involvement in the acts in question."  *Id.* at 288–89.  The plaintiff's theory instead relied on "the bare fact that he was in overall charge of the Police Department."  *Id.* at 289.  The Court held that this single fact was insufficient.  To hold otherwise, the Court explained, would unduly stifle criticism of the government:

> This proposition has disquieting implications for criticism of governmental conduct.  For good reason, 'no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence.'  *City of Chicago v. Tribune Co.*, 307 Ill. 595, 601 (1923).  The present

> proposition would sidestep this obstacle by
> transmuting criticism of government, however
> impersonal it may seem on its face, into
> personal criticism, and hence potential libel,
> of the officials of whom the government is
> composed. . . . We hold that such a
> proposition may not constitutionally be
> utilized to establish that an otherwise
> impersonal attack on governmental operations
> was a libel of an official responsible for those
> operations.

*Id.* at 291–92; *accord Rosenblatt v. Baer*, 383 U.S. 75, 80
(1966) ("[I]n the absence of sufficient evidence that the attack
focused on the plaintiff, an otherwise impersonal attack on
governmental operations cannot be utilized to establish a libel
of those administering the operations.").

*Sullivan*'s reasoning is inapplicable here. First, Plaintiffs
*were* personally involved in the acts in question—the Taylor
shooting. As the California Court of Appeal has observed,
"an entirely different picture would have been presented [in
*Sullivan*] had the plaintiffs been police officers who were
personally involved in the incidents referred to." *Mullins v.
Brando*, 91 Cal. Rptr. 796, 801 (Ct. App. 1970). Second, this
case does not involve an "impersonal attack on government
operations," and Plaintiffs do not administer the Seattle
Police Department. *See Rosenblatt*, 383 U.S. at 80. The
libel-on-government concerns underlying *Sullivan*, therefore,
are absent here.

**b.**

Sawant places great emphasis on the fact that she did not identify Plaintiffs by name in her remarks. This fact is not dispositive. Under Washington law, as under defamation law generally, "defamatory words referring to ascertainable persons are actionable to the same extent as those referring to designated persons." *Olympia Waterworks v. Mottman*, 153 P. 1074, 1075 (Wash. 1915) (per curiam). As the Washington Supreme Court has explained:

> [I]t is not necessary that the person defamed be named in the publication if, by intrinsic reference, the allusion is apparent or if the publication contains matters of description or reference to facts and circumstances from which others may understand that the complainant is the person referred to, or if he is pointed out so that the persons knowing him could and did understand that he was the one referred to in the publication.

*Spangler v. Glover*, 313 P.2d 354, 358–59 (Wash. 1957) (en banc); *accord* Restatement (Second) of Torts § 564 cmt. b (1977).

This principle applies here. Sawant did not identify Plaintiffs by name, but (1) her words can reasonably be understood as referring to the officers involved in the Taylor shooting, (2) readers and listeners knew that Plaintiffs were the officers involved in the shooting, and (3) those readers and listeners understood Sawant's remarks to refer to Plaintiffs. These allegations are sufficient to plead that Sawant's remarks were of and concerning Plaintiffs.

### c.

Sawant also relies on case law in which "courts have repeatedly dismissed defamation suits brought by police officers where the challenged statements did not refer to the plaintiff by name."   The cases upon which she relies, however, are readily distinguishable from this one, and she fails to distinguish other cases, more analogous to this one, in which courts have *sustained* such claims.   As to the former, aside from the fact that they are not controlling on this Court, Sawant's cases are distinguishable on their facts: *Edgartown Police Patrolmen's Ass'n v. Johnson*, 522 F. Supp. 1149, 1152 (D. Mass. 1981) ("None of the defendant's statements . . . singled-out any member of the police force"); *Fornshill v. Ruddy*, 891 F. Supp. 1062, 1071 (D. Md. 1995) (concluding that the defendant's statements were not concerning the plaintiff police officer where only the police department's "official reports" were challenged, not any individual officer's action on the scene); *Dean v. Dearing*, 561 S.E.2d 686, 688–89 (Va. 2002) (rejecting the defamation claim of an individual officer because the defendant's accusations neither referenced the plaintiff nor could be understood to have specifically implicated him).

Plaintiffs, on the other hand, cite several cases in which, on facts more analogous to those presented here, courts have upheld defamation claims:   *Cushman v. Day*, 602 P.2d 327, 330–31 (Or. Ct. App. 1979) (unnamed officers who responded to a labor protest, and were subjects of the statement that "[t]here'll be criminal charges filed against every officer that was out there this morning," stated a claim for relief); *Mullins*, 91 Cal. Rptr. at 802–03 (although the defendant's statements implying that Oakland police officers had murdered a member of the Black Panthers did not

designate the officers by name, the court concluded that the officers involved in the shooting had adequately alleged that the statements were of and concerning them).

**d.**

Sawant also argues that she cannot be held liable, even if readers and listeners reasonably understood her remarks to refer to Plaintiffs, because she was not responsible for making Plaintiffs' identities public.  Quoting *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 710 (N.D. Ill. 1990), she argues that,

> where a speaker is meticulous enough to preserve the anonymity of an individual about whom damaging information is given, the speaker should not be exposed to liability for defamation because someone else ferrets out the identity of the individual and couples it with the speaker's statement in a later publication.

She maintains that she "cannot be held liable for the conclusions that 'family, friends, and colleagues' and 'members of the general public' reached based on information that they acquired from elsewhere."

Apart from *Vantassell-Matin*, however, we can find no support for this novel proposition.  The law is clear that "defamatory words referring to ascertainable persons are actionable to the same extent as those referring to designated persons."  *Olympia Waterworks*, 153 P. at 1075; *accord* Restatement (Second) of Torts § 564 cmt. b (1977).  And the authorities make no distinction between information acquired

from the speaker and information acquired from other sources.

In any event, even if *Vantassell-Matin* were correct on the law, it would not apply here. The critical fact in *Vantassell-Matin* was that the plaintiffs' identities were not ascertainable at the time the allegedly defamatory statements were made. 741 F. Supp. at 710. Here, by contrast, the complaint alleges that Plaintiffs' family, friends, and colleagues were "familiar with the details of the Che Taylor shooting" and understood Sawant's statements to be directed at Plaintiffs at the time they were made. TAC ¶ 45. Indeed, by June 2017, when Sawant accused Plaintiffs of murder for a second time, numerous newspaper articles had identified Plaintiffs as the officers involved in the shooting. TAC ¶ 48. By then, members of the general public too would have been able to ascertain that Sawant's statements referred to Plaintiffs. In short, *Vantassell-Matin* is an outlier and is not persuasive authority, but even if it were, it does not dictate the outcome of this case.

**e.**

Sawant also raises a policy argument: "If police officers could transform their political critics into defamation defendants by relying on the conclusions of 'friends, families and colleagues' to satisfy the 'of and concerning' requirement," she contends, "then police could weaponize litigation to silence their critics."

The law, however, makes clear that defamation claims may be based on how a communication is understood by individuals who know the plaintiffs. The law requires only that "persons knowing [the plaintiff] could and did

understand that he was the one referred to in the publication." *Spangler*, 313 P.2d at 358–59. "It is not necessary that everyone recognize the [plaintiff] as the person intended; it is enough that any recipient of the communication reasonably so understands it." Restatement (Second) of Torts § 564 cmt. b (1977). "[I]t is enough that those who know or know of plaintiff (or even a single recipient) reasonably connect the plaintiff to the defendant based on circumstances or facts of which the recipient(s) has knowledge." David Elder, *Defamation: A Lawyer's Guide* § 1:30 (2020) (footnotes omitted); *see also, e.g.*, *Doe v. Hagar*, 765 F.3d 855, 863 (8th Cir. 2014).

Sawant, moreover, mischaracterizes Plaintiffs' allegations. Plaintiffs do not rely solely on the conclusions of the family, friends, and colleagues to satisfy the of-and-concerning requirement. There are two sets of allegations in the complaint that support the conclusion that Sawant's statements can reasonably be understood to refer to Plaintiffs: Sawant's words themselves, and the conclusions drawn by Plaintiffs' family, friends, and colleagues. If Plaintiffs had relied solely on the allegation that a friend or family member understood a communication to refer to Plaintiffs, this might be a different case. As the Restatement points out, a communication is of and concerning the plaintiff when recipients *reasonably* understand that it was intended to refer to the plaintiff. Restatement (Second) of Torts § 564 (1977). "It is not necessary that everyone recognize the [plaintiff] as the person intended," but "the fact that only one person believes that the plaintiff was referred to is an important factor in determining the reasonableness of his belief." *Id.* cmt. b. Here, Plaintiffs' allegations regarding family, friends, and colleagues are consistent with Sawant's words themselves. Their allegation that the communications were

of and concerning them, therefore, clears the plausibility threshold.

We emphasize, moreover, that, at this stage of the case, it is not our function to decide whether Sawant is liable for defaming Plaintiffs. We hold only that Plaintiffs have plausibly pleaded the single element of their defamation claims at issue on this appeal—the of and concerning element.

### f.

Finally, we reject Sawant's argument that Plaintiffs improperly relied on allegations of extrinsic facts. Plaintiffs have properly relied on extrinsic facts to show that: (1) they were publicly identified as the officers involved in the Taylor shooting; (2) their families, friends, and colleagues knew they were the officers involved; and (3) their families, friends, and colleagues understood Sawant's remarks to refer to them. Their pleading of these extrinsic facts is consistent with Washington law:

> In determining how the recipients would understand the words used, account may be taken of the circumstances under which they were published in so far as they were known to the recipients. It is proper to allege in the complaint that the words were published of and concerning the plaintiff and with reference to extrinsic circumstances, upon which their peculiar applicability to the plaintiff depends. Words which are harmless in themselves may be defamatory in the light of surrounding circumstances.

*Ziebell v. Lumbermens Printing Co.*, 127 P.2d 677, 680–81 (Wash. 1942); *accord Purvis*, 344 P.2d at 711 ("While the reasonable meaning of published words cannot be altered or extended by the pleading of innuendo, the pleader may be able to add meaning to words by a pleading of the circumstances surrounding the publication.").    As the Restatement makes clear, "[e]xtrinsic facts may make it clear that a statement refers to a particular individual although the language used appears to defame nobody."    Restatement (Second) of Torts § 564 cmt. b (1977).

The district court rejected Plaintiffs' allegations of extrinsic facts on the ground that "Councilmember Sawant's words themselves do not intrinsically reference Plaintiffs." *Miller*, 2020 WL 7714414, at *4 (citing *Spangler*, 313 P.2d at 358).  What the district court elides, however, is that a reasonable person could understand Sawant's remarks as criticism of the officers involved in the Taylor shooting.  In doing so, the district court erred.[13]

In sum, we hold that the TAC plausibly alleges that Sawant's statements were of and concerning Plaintiffs. Accordingly, we reverse the dismissal of Plaintiffs' defamation and outrage claims.

---

[13] We do not read *Spangler* as requiring that a communication intrinsically reference a plaintiff.  *Spangler* said that "it is not necessary that the person defamed be named in the publication [1] if, by intrinsic reference, the allusion is apparent *or* [2] if the publication contains matters of description or reference to facts and circumstances from which others may understand that the complainant is the person referred to, *or* [3] if he is pointed out so that the persons knowing him could and did understand that he was the one referred to in the publication."  313 P.2d at 358–59 (emphases added).

### IV.

Finally, Plaintiffs have requested that this case be reassigned to a different district judge on remand.  In *United States v. Reyes*, 313 F.3d 1152, 1159 (9th Cir. 2002), we noted that "[a]bsent proof of personal bias on the part of the district judge," and no such proof has been proffered in this case, "remand to a different judge is proper only under unusual circumstances."  One such "unusual circumstance" is "[a] district judge's adamance in making erroneous rulings," which "may justify remand to a different district judge." *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir. 1986) (citations omitted).  While it is true that this is the second appeal from this district judge's rulings on the sufficiency of the complaint, *see* footnote 7, *supra*, in *Sears, Roebuck*, in which the case was reassigned to a different judge on remand, we noted that "[t]his is the fourth pretrial appeal in this case and the third time the government has appealed from dismissal of the indictment," *id*. at 781.  We do not believe that, here, these two erroneous rulings on the sufficiency of two different versions of the complaint rise to the level of "adamance."  Suffice it to say that on remand the district court should accept the TAC as sufficiently pleading a defamation claim under Washington law.  With that observation, Plaintiffs' request for reassignment is denied.

·   ●   ·

The judgment is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.  Costs on appeal are awarded to Plaintiffs.

**JUDGMENT REVERSED and CASE REMANDED.**