1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT MILLER, MICHAEL
SPAULDING,

                Plaintiffs,

     v.

KSHAMA SAWANT,

                Defendant.

CASE NO. C18-506 MJP

ORDER GRANTING MOTION
FOR PARTIAL JUDGMENT ON
THE PLEADINGS

     This matter comes before the Court on Defendant's Motion for Partial Judgment on the Pleadings or, Alternatively, Partial Summary Judgment. (Dkt. No. 95.) Having reviewed the Motion, Plaintiffs' Response (Dkt. No. 96), the Reply (Dkt. No. 97), and all supporting materials, the Court GRANTS the Motion and DISMISSES Plaintiffs' "federal defamation" claim.

1

**BACKGROUND**

2

**A.      Factual Background**

3          Plaintiffs Scott Miller and Michael Spaulding are Seattle Police Officers who shot and

4   killed Che Taylor while trying to arrest him in February 2016. (Third Amended Complaint ¶¶ 2-

5   3, 20 (Dkt. No. 52).) Several days later, Defendant Seattle City Councilmember Kshama Sawant

6   spoke at a protest during which she stated:

7               This is dramatic racial injustice, in this city and everywhere in this nation. The brutal
                murder of Che Taylor, just a blatant murder at the hands of the police, show how urgently
8               we need to keep building our movement for basic human rights for black people and
                brown people. I want to let you know that I stand here both as an elected official, as a
9               brown person, as an immigrant woman of color, and as someone who has been in
                solidarity with the Black Lives Matter movement, and our movement for racial, economic
10              and social justice.…

11              And I am here as an elected official because I am completely committed, unambiguously
                committed, to holding the Seattle Police Department accountable for their reprehensible
12              actions, individual actions. We need justice on the individual actions and we need to turn
                the tide on the systematic police brutality and racial profiling.

13   (FAC ¶ 37 (emphasis omitted).)

14          Roughly a year after the shooting, the King County prosecutor convened an inquest

15   overseen by a judge and contested by a lawyer representing the family of Che Taylor. (TAC ¶

16   50-51.) An impartial jury cleared Plaintiffs of wrongdoing. (Id. ¶ 52.) The City's Force

17   Investigation Team (FIT), in conjunction with the Office of Professional Accountability (OPA),

18   performed a separate, independent investigation of the incident. (Id. ¶ 53.) Plaintiffs were again

19   cleared of wrongdoing. (Id. ¶ 54.) The FIT's findings were independently reviewed by the City's

20   Firearms Review Board (FRB). (Id. ¶ 55.) The OPA again participated and Plaintiffs were

21   cleared of wrongdoing. (Id. ¶¶ 55-56.) The Seattle Police Department also examined the incident

22   and confirmed that Plaintiffs' conduct was within policy. (Id. ¶ 57.) Plaintiffs were not

23

24

terminated and they identify no demotions or adverse employment actions taken as a result of Sawant's remarks.

In June 2017, Sawant made the following remarks after Seattle Police offers shot and killed Charleena Lyles, a pregnant, Black woman:

> I join the NAACP in demanding such a transparent public hearing. When Che Taylor was murdered by the police, the community and I demanded such a hearing from the Mayor and from Council member Gonzalez whose committee oversees the SPD, but neither the Mayor nor Council member Gonzalez responded. In…in light of the horrific killing of Charleena now I again urge…I publicly urge the City Council to hold such a hearing. I have also earlier today sent a number of important questions to the SPD.

> . . . We demand that the City of Seattle appoint an independent committee to review this case . . . with . . . with full public accountability. We cannot rely on the existing process to determine why Charleena was killed because that process has failed Che Taylor. . . that process has failed every person who was killed at the hands of the Police. Sisters and brothers, I will add one more thing for our movement that is standing with Charleena to think about, a deeply unequal society such as ours also implies that the lives of poor and low-income people, black and brown people, homeless people, those who have mental health issues and challenges . . . the system treats our lives as expendable.

(TAC ¶ 47.)

Plaintiffs allege that Sawant's comments caused a "political firestorm" that "turned [the officers' lives] upside down." (TAC ¶ 60.) Plaintiffs assert that the "fairness of the inquest hearing was implicated by the defamat[ory]" statements. (Id. ¶ 61.) Plaintiffs allege that Plaintiffs were "publicly berated and chastised" and that "[b]eing called a racist and murderer directly impacted their careers, which were stymied." (Id. ¶¶ 62-63.) But Plaintiffs do not allege what the impact was or how their careers were stymied. Plaintiffs claim "their families suffer[ed]" and Plaintiff Miller "whose children attended [school(s) within] the Seattle School District, had to move." (Id. ¶ 64.) And without any specificity, Plaintiffs assert that "[t]he damage has been far-reaching, extending throughout King County and well-beyond." (Id. ¶ 66.)

**B.    Procedural Background**

Plaintiffs' Third Amended Complaint asserts state law defamation and outrage claims, as well as a "federal defamation" claim against Sawant. (TAC ¶¶ 67-87.) The only claim at issue in Sawant's Motion is Plaintiffs' "federal defamation" claim, which the Court has previously explained can only be pursued under 42 U.S.C. § 1983. (Order Denying Motion to Dismiss at 3 (Dkt. No. 92).) That is because there is no federal common law or federal statutory cause of action for defamation. (Order to Show Cause at 2 (Dkt. No. 88).)

Plaintiffs do not specify whether their Section 1983 claims is against Sawant in her personal capacity as a Councilmember or in her official capacity as a Councilmember. And although Plaintiffs originally sued the City of Seattle, they voluntarily dismissed those claims. (TAC ¶ 8.) This is relevant to determining what kind of Section 1983 claims are at issue.

**ANALYSIS**

**A.    Legal Standard**

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." San Francisco Apartment Ass'n v. City & Cnty. of San Francisco, 881 F.3d 1169, 1175 (9th Cir. 2018) (citation and quotation omitted). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." See Chavez v. United States, 683 F.3d 1102, 1008 (9th Cir. 2012) (citation and quotation omitted). On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter,

1   accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556

2   U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). Mere

3   conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of

4   action" are not sufficient. <u>Twombly</u>, 550 U.S. at 555.

5   **B.      The Section 1983 Claim is Asserted Against Sawant in Her Personal Capacity**

6          The first question Sawant's Motion poses is whether she is sued in her personal or

7   official capacity—a question left unanswered in the Third Amended Complaint. This impacts the

8   Court's analysis of the adequacy of allegations supporting Plaintiffs' Section 1983 claim. The

9   Court finds that Sawant has been sued in her personal capacity.

10         The Court briefly reviews the prima facie elements of the claim and then the distinction

11  between personal and official capacity suits. "Traditionally, the requirements for relief under [§]

12  1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by

13  federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state

14  law." <u>Crumpton v. Gates</u>, 947 F.2d 1418, 1420 (9th Cir. 1991). When a state actor is sued, the

15  question remains whether they are sued in their personal or official capacity. "Personal-capacity

16  suits seek to impose personal liability upon a government official for actions [the official] takes

17  under color of state law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985). "Official-capacity

18  suits, in contrast, 'generally represent only another way of pleading an action against an entity of

19  which an officer is an agent.'" <u>Id.</u> at 165-66 (quoting <u>Monell v. New York City Dep't of Soc.</u>

20  <u>Servs.</u>, 436 U.S. 658, 690, n.55 (1978)). "[W]hen a plaintiff sues a defendant for damages, there

21  is a presumption that he is seeking damages against the defendant in his personal capacity."

22  <u>Mitchell v. Washington</u>, 818 F.3d 436, 442 (9th Cir. 2016). "[T]o establish personal liability in a

23  § 1983 action, it is enough to show that the official, acting under color of state law, caused the

24

1  deprivation of a federal right." Kentucky, 473 U.S. at 166. But an official sued in her personal

2  capacity may be able to establish immunity from claims for damages. Id. at 166–67.

3      Here, there is no real contest that Sawant is sued in her personal capacity. Because

4  Plaintiffs seek damages from Sawant, there exists a presumption she is sued in her personal

5  capacity. See Mitchell, 818 F.3d at 442. Plaintiffs offer no rebuttal. And because Plaintiffs have

6  not sued the City of Seattle, they would be unable to obtain damages from Sawant if she was

7  sued in her official capacity. In their Opposition, Plaintiffs oddly argue that Sawant is sued "both

8  as 'an elected official' and in her individual capacity." (Opp. at 6. (Dkt. No. 96).) But Sawant

9  cannot be sued under Section 1983 in her "individual capacity" (outside of her role as a

10  councilmember) because her actions would then not be taken under "color of state law." See

11  Crumpton, 947 F.2d at 1420. Notwithstanding Plaintiffs' self-defeating argument, the Court

12  accepts the well-pleaded allegations as true that Sawant was acting in her personal capacity as a

13  councilmember (and state actor). See S.F. Apartment, 881 F.3d at 1175.

14  **C.     Plaintiffs Fail to State a Defamation Claim Under Section 1983**

15      To state a claim for defamation under Section 1983, Plaintiffs must allege "stigma plus"

16  the deprivation of a "liberty" or "property" interest protected by the Due Process Clause. See

17  Paul v. Davis, 424 U.S. 693, 712 (1976). "[D]ue process protections apply only if a plaintiff is

18  subjected to "'stigma plus'; i.e., if the state makes a charge against [a plaintiff] that might

19  seriously damage his standing and associations in the community,' and '1) the accuracy of the

20  charge is contested, 2) there is some public disclosure of the charge, and 3) it is made in

21  connection with the termination of employment or the alteration of some right or status

22  recognized by state law.'" Wenger v. Monroe, 282 F.3d 1068, 1074 (9th Cir. 2002), as amended

23  on denial of reh'g and reh'g en banc (Apr. 17, 2002) (quoting Llamas v. Butte Community

24

1   College Dist., 238 F.3d 1123, 1129 (9th Cir. 2001)). "[I]njury to reputation standing alone does

2   not violate the Due Process Clause of the Fourteenth Amendment[.]" Id. 282 F.3d at 1076.

3   That's because "the interest in reputation . . . is neither 'liberty' nor 'property' guaranteed against

4   state deprivation without due process of law. " Paul, 424 U.S. at 712.

5         Plaintiffs' Section 1983 defamation claim fails because it lacks an alleged deprivation of

6   a right protected by the Due Process Clause—the "stigma plus." The Court reviews the reasons.

7         First, neither officer is alleged to have been disciplined or terminated from employment

8   as a result of the Sawant's remarks. See Wenger, 282 F.3d at 1074. Just the opposite, both were

9   cleared through the inquest convened by the King County prosecutor, and through the reviews

10  conducted by the OPA, FIT, FRB, and Seattle Police Department. (TAC ¶¶ 50-57.) And although

11  Plaintiffs allege that "[t]he fairness of the inquest hearing was implicated by the defamation,"

12  (TAC ¶ 61), they affirmatively allege that they were cleared by an "impartial jury" (TAC ¶ 52).

13  This undermines any claim that the alleged defamation was in connection with a termination or

14  alteration in their employment rights. See Wenger, 282 F.3d at 1074; (Opp. at 8 (citing this same

15  standard)). In their opposition, Plaintiffs claim "they were forced to undergo a 'reopening' of

16  sorts of the prior investigations into the shooting" and there was a "threat[] to their careers . . . if

17  they did not cooperate fully." (Opp. at 8-9.) These new allegations are not supported by any

18  declaration and are not included in the Third Amended Complaint. They are therefore not

19  properly considered on the Motion for Judgment on the Pleadings. See S.F. Apartment, 881 F.3d

20  at 1175. But even if the Court considers these allegations, they fail to show the deprivation of a

21  liberty or property interest. They merely confirm that Plaintiffs remained employed. And as

22  elsewhere alleged, the investigations cleared them of wrongdoing. Similarly, Plaintiffs have not

23  provided any factual support for their loose suggestion that Sawant's remarks "stymied" their

24

1 careers. (TAC ¶ 62.) There are no facts to support this allegation and insufficient detail to

2 conclude that it shows an alteration in a protected right.

3          Second, Plaintiffs fail to identify allegations sufficient to support the theory advanced in

4 their Opposition that Sawant's remarks interfered with their "constitutional right of association

5 and family integrity." (Opp. at 8-9 (citing Roberts v. United States Jaycees, 468 U.S. 609, 617-18

6 (1984).) The Court reviews the rights independently.

7          Plaintiffs fall short of identifying and articulating an injury to their right of association.

8 The Supreme Court has recognized "two distinct" theories of how the First Amendment protects

9 the right of association. Roberts, 468 U.S. at 617. "In one line of decisions, the Court has

10 concluded that choices to enter into and maintain certain intimate human relationships must be

11 secured against undue intrusion by the State because of the role of such relationships in

12 safeguarding the individual freedom that is central to our constitutional scheme." Id. at 617-18.

13 "In another set of decisions, the Court has recognized a right to associate for the purpose of

14 engaging in those activities protected by the First Amendment—speech, assembly, petition for

15 the redress of grievances, and the exercise of religion." Id. at 618. Plaintiffs here allege that

16 Sawant's comments have damaged their reputations, "turned [their lives] upside down," caused

17 their "families [to] suffer," and Plaintiff Miller "had to move" and transfer his children out of the

18 Seattle School District. (TAC ¶¶ 60-66.) But Plaintiffs fail to identify or explain how these

19 alleged acts show an injury to the right of association. There are no allegations that Plaintiffs

20 were unable "to enter into or maintain intimate human relationships." See Roberts, 468 U.S. at

21 617-18. And these allegations do not show that they were unable to speak, assemble, exercise

22 their religion, or seek redress of grievances. See id. at 618. The Court finds that Plaintiffs have

23 failed to allege an injury to their First Amendment right of association.

24

1    Plaintiffs also fall short of identifying and articulating an injury to their right of family

2    integrity. The cases Plaintiffs cite make clear that there must be a deprivation of the custody or

3    control of a child, or a deprivation of the right to choose where one's children are educated. <u>See</u>

4    <u>Rivera v. Marcus</u>, 696 F.2d 1016 (2d Cir. 1982) (removal of children from foster homes without

5    due process); <u>Duchesne v. Sugarman</u>, 566 F.2d 817 (2d. Cir. 1977) (removal of children without

6    due process); <u>Roberts</u>, 468 U.S. at 619 (identifying the "raising and education of children" as a

7    protected right).[1] These cases track the principle that "the interest of parents in the care, custody,

8    and control of their children—is perhaps the oldest of the fundamental liberty interests

9    recognized by this Court." <u>Troxel v. Granville</u>, 530 U.S. 57, 65 (2000) (plurality opinion). And

10   the Ninth Circuit has long explained that "[a] parent has a 'fundamental liberty interest' in

11   companionship with his or her child." <u>Rosenbaum v. Washoe Cnty.</u>, 663 F.3d 1071, 1079 (9th

12   Cir. 2011) (quoting <u>Kelson v. City of Springfield</u>, 767 F.2d 651, 654–55 (9th Cir. 1985)). Here,

13   Plaintiffs fail to allege how Sawant's comments deprived them of their ability to have custody or

14   control of their children or to choose how to educate their children. Plaintiffs allege they

15   "watched their families suffer," but there are no allegations that the family integrity was

16   impacted. (TAC ¶ 64.) And although Plaintiff Miller alleges he had to move, he does not allege

17   that Sawant's remarks interfered with this right to choose how his children were educated. (<u>See</u>

18   TAC ¶ 65.) In full, the complaint states: "Detective Miller, whose children attended the Seattle

19   School District, had to move." (<u>See id.</u>) He does not allege he changed their school or that

20   Sawant's remarks was a proximate cause of that change. Even if he had, they would not show a

21

22   _____

[1] Plaintiffs also cite <u>Singletown v. Cecil</u>, 155 F.3d 983 (8th Cir. 1998), but this case is irrelevant.

23   It examined whether a government employee had a due process right not to be terminated from
     an at-will position based on a conversation he had with his wife and daughter about bribing the

24   chief of police. <u>See id.</u> at 986. The case has nothing to say about the right to familial integrity.

1    deprivation of the right to choose where his children were educated. These allegations, construed

2    in the light most favorable to Plaintiffs fail to show the deprivation of a right to family integrity.

3          The Court finds that Plaintiffs have not sufficiently pleaded a claim for defamation under

4    Section 1983 by failing to identify the deprivation of a constitutional right in addition to the

5    alleged defamation. See Wenger, 282 F.3d at 1074. The Court GRANTS the Motion and

6    DISMISSES this claim.

7    **D.    Qualified Immunity Applies**

8          The Court also finds that even if Plaintiffs had alleged a claim for defamation under

9    Section 1983, it is barred by qualified immunity.

10         On a motion to dismiss, "qualified immunity protects government officials from liability

11   for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory

12   or constitutional right, and (2) that the right was clearly established at the time of the challenged

13   conduct.'" Wood v. Moss, 572 U.S. 744, 757 (2014) (internal quotation marks omitted) (quoting

14   Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). "These two prongs of the analysis need not be

15   considered in any particular order, and both prongs must be satisfied for a plaintiff to overcome a

16   qualified immunity defense." Scott v. County of San Bernardino, 903 F.3d 943, 948 (9th Cir.

17   2018) (quoting Shafer v. County of Santa Barbara, 868 F.3d 1110, 1115 (9th Cir. 2017)).

18         As the first step, as explained above, Plaintiffs have not identified a violation of a

19   statutory or constitutional right. They fail to allege a "stigma plus" defamation claim under

20   Section 1983. They have not identified a violation of constitutional rights related to the

21   investigations and inquest. Nor have they identified a violation to their right of association or

22   family integrity. Sawant is thus entitled to qualified immunity at the first step.

23

24

As to the second step, Plaintiffs fail to identify a clearly established right that Sawant allegedly violated. This is fatal because the Supreme Court "has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." Kisela v. Hughes, ___ U.S. ___, ___, 138 S. Ct. 1148, 1152 (2018) (citation and quotation omitted). "Rather, the clearly established law at issue 'must be particularized to the facts of the case.'" Foster v. City of Indio, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam) (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam)). In their Opposition, Plaintiffs do not cite a single case to identify the clearly established law that is particularized to the facts of the case. (See Opp. at 10.) In fact, their brief on this step of the qualified immunity analysis cites only a Second Circuit opinion speaking generally to the second step analysis, not the substance of the constitutional claim. (See id. (citing LaBounty v. Coughlin, 137 F.3d 68, (2d. Cir. 1998)).) Plaintiffs nowhere formulate what the clearly established law is and how Sawant violated it. Plaintiff have therefore failed to meet their burden on the second step of this analysis.

Plaintiffs also suggest that qualified immunity cannot be granted because there is a dispute of fact as to whether Sawant's "comments were part of her role as an elected official or not." (Opp. at 6.) They argue that "Sawant has not even attempted to explain how her comments were part of her role as a City of Seattle Council member." (Id. at 7.) As the Court has explained, if Sawant did not act as a councilmember, then Plaintiffs have no claim under Section 1983. She can only be sued if she made the comments as a councilmember. As such, Plaintiffs identify a self-defeating dispute of fact. But the Court accepts the pleadings, whose allegations sufficiently identify Sawant as having acted in her personal capacity as a councilmember in making the comments at issue.

1    The Court finds that Sawant is entitled to qualified immunity. This is an alternative basis

2  on which the Court GRANTS Sawant's Motion.

3                                                    **CONCLUSION**

4    The Court finds that Plaintiffs' federal defamation claim asserted under Section 1983

5  fails to satisfy the "stigma plus" test. Plaintiffs have not identified the deprivation of a

6  constitutional right, which is necessary to the claim. The Court dismisses the claim under Rule

7  12(c). Additionally, the Court finds that Sawant is entitled to qualified immunity at both steps of

8  the inquiry. Even if Plaintiffs had successfully pleaded a Section 1983 defamation claim, they

9  have not articulated how Sawant violated clearly established law tailored to the facts of this case.

10  As such, Sawant is entitled to qualified immunity. This is an additional and alternative ground on

11  which the Court dismisses Plaintiffs' claim. The Court therefore GRANTS the Motion. The

12  Court does not reach the alternative relief (summary judgment), as doing so is unnecessary to

13  reach the dispositive issues.

14    Although Plaintiffs have not asked for leave to amend, the Court's dismissal is

15  WITHOUT PREJUDICE. If Plaintiffs wish to amend their Section 1983 defamation claim, they

16  must do so within 14 days of entry of this Order.

17    The clerk is ordered to provide copies of this order to all counsel.

18    Dated November 21, 2022.

19

20                                                          Marsha J. Pechman
                                                            United States Senior District Judge

21

22

23

24